## Richard A. Shuttuck, *et al vs.* O. P. Smith, *et al.*

Opinion filed September 5th, 1896.

### Assessment—Under Valuation.

When an assessor, acting within his jurisdiction, and in good faith, and in the exercise of his honest judgment, assesses certain property for taxtion at less than its actual value, such under valuation will not invalidate the entire assessment.

### Omission of Taxable Property.

Nor will the omission of taxable property from the assessment roll by the assessor, while so acting, invalidate the entire assessment, whether such omission be through inadvertence or design, through a mistake of facts or a misapprehension of the law.

### Railroad Property—Assessed at Less Than True Value.

When by statute the duty of assessing railroad property is devolved upon the state board of equalization, it is not sufficient to invalidate such assessment to show that the value fixed by such board was less than the actual value in the judgment of the said board, when the record also shows that there are grave doubts as to the liability of the property for taxation, and is silent as to whether or not the board regarded it as taxable.

### Curative Legislation.

It is competent for the legislature, by curative act, to validate a defect levy which it might originally have authorized to be made in the manner in which it was done.

### County Tax Levy—Itemized Statement.

The statute required that the county tax levy should be based upon an itemized statement of county expenses for the ensuing year, and that such statement should be included in the published proceedings of the board of county commisioners, but did not further indicate the form or nature of such statement. The records of such board showed a levy of a specific amount for each item of county expenses. *Held*, that this was a sufficient compliance with the law as to such itemized statement.

### Levy of General City Tax—Yeas and Nays.

The statute relating to proceedings by city councils declared, "The yeas and nays shall be taken upon the passage of all ordinances, and on all propositions to create any liability against the city or for the expenditure or appropriation of its money." Comp. Laws, § 880. *Held* that this did not require that the yeas and nays be taken upon the passage of a resolution levying a general city tax.

### Sale for More Than Amount Due.

Under the revenue law of 1890, a tax sale is not rendered invalid by reason of the auditors selling for an amount in excess of the amount due.

**Tax Law Consitutional.**

> A state law which directs that the entire tract of land be sold to the highest bidder, for the taxes delinquent thereon, violates no constitutional provision.

Appeal from District Court, Cass County; *McConnell*, J.

Action by Richard A. Shattuck as administrator of the estate of Annie N. Trelease and others against O. P. Smith and John C. Miller, as county auditor. Judgment for plaintiffs and defendants appeal.

Reversed.

*Charles A. Pollock* and *R. M. Pollock*, for appellants.

When provision is made for an application to a board of equalization or review for the correction of errors in an assessment, such remedy is exclusive. Cooley on Taxation 748; *N. P. Ry. Co.* v. *Patterson*, 10 Mont. 90, 24 Pac. Rep. 704; *Bath* v. *Whitmore*, 79 Me. 182; *Comstock* v. *Grand Rapids*, 54 Mich. 641; *Randle* v. *Williams*, 18 Ark. 380; *San Jose* v. *January*, 57 Cal. 614; *Jeffersonville* v. *McQueen*, 49 Ind. 64; *Norcross* v. *Milford*, 150 Mass. 237; *State* v. *Tyler*, 48 Conn. 145; *State* v. *Danser*, 23 N. J. L. 552; *Vose* v. *Willard*, 47 Barb. 320; *Tripp* v. *Merchants Mut. F. Ins. Co.*, 12 R. I. 435; *Stanley* v. *Albany Co.*, 121 U. S. 535. And a failure to apply for relief to this board will not avail against collection of the tax. *Chambers* v. *Satterlee*, 40 Cal. 519; *Windson* v. *Field*, 1 Conn. 279; *Deane* v. *Todd*, 22 Mo. 90; *Peo.* v. *Tax Commissioners*, 99 N. Y. 254; *Meade* v. *Haines*, 81 Mich. 261; *First Nat. Bank* v. *St. Joseph Twp.*, 46 Mich. 530; Van Norts' Appeal, 121 Pa. St. 118; *Paulson* v. *Mathews*, 40 N. J. L. 268; *State* v. *Wright*, 4 Nev. 251; *Price* v. *Kramer*, 4 Colo. 546; *New Orleans* v. *Canal etc. Co.*, 32 La. Ann. 160; *Kittle* v *Shervin*, 11 Neb. 65. A party has the right to complain to the board of equalization that the property of others has been assessed too low. *Dundee Mortgage Co.* v. *Charlton*, 32 Fed. Rep. 192. The remedy for over valuation, as the assessment to a party of property he does not own, is by appeal to the commissioners. *City of Bath* v. *Whitmore*, 9 At. Rep. 119; *Stickney* v. *Bangor*, 30 Me. 404; *Heminway* v. *Machias*, 33 Me. 445; *Gilpatrick*

v. *Saco*, 57 Me. 277; *Waite* v. *Princeton*, 66 Me. 225. Inequality of assessment must be adjusted before the board of review. *Williams* v. *City*, 51 Mich 120, 16 N. W. Rep. 260; *Porter* v. *Ry. Co.*, 76 Ill. 598; *Humphreys* v. *Nelson*, 4 N. E. Rep. 737; *Peninsular I. & L. Co.* v. *Crystal Falls Twp.*, 27 N. W. Rep. 668; *Harris* v. *Freemont Co.*, 19 N. W. Rep. 826; *Macklot* v. *City*, 17 Ia. 379; *Buell* v. *Schale*, 39 Ia. 293; *Meger* v. *County*, 43 Ia. 592; *Nugent* v. *Bates*, 51 Ia. 77; *New York, etc.* v. *Gleason*, 13 N. E. Rep 204. The court cannot inquire as to the basis adopted by the state board of equalization to ascertain and arrive at the value fixed upon property. *Ins. Co.* v. *Pollock*, 75 Ill. 292; *Felsenthal* v. *Johnson*, 104 Ill. 21.

*Miller & Resser* and *J. E. Robinson*, for respondents.

Where any material portion of taxable property is intentionally omitted from the assessment roll, it avoids the assessment. *Perry* v. *Mulberry*, 21 Pick. 65; *Henry* v. *Chester*, 15 Vt. 460; *Perkins* v. *Nugent*, 45 Mich. 159; *Hurd* v. *Raymond*, 50 Mich. 369; *Weeks City*, 10 Wis. 186; *Smith* v. *Smith*, 19 Wis. 649; *Hersey* v. *Supervisors*, 37 Wis. 75; *Marsh* v. *Supervisors*, 42 Wis. 502; *Sheetler* v. *City*, 43 Wis. 48; *McTwiggan* v. *Hunter*, 30 At. Rep. 962; *State* v. *Brand*, 23 N. J. L. 509; *Auditor General* v. *Prescott*, 94 Mich. 190, 53 N. W. Rep. 1058; *Merritt* v. *Humphrey*, 24 Mich. 170; *Johnson* v. *Oshkosh*, 65 Wis. 473. The tax sales were each for an excessive amount and void for this reason. *Baker* v. *Supervisors*, 39 Wis. 447; *Mileg* v. *Coleman*, 47 Wis. 184; *Kimball* v. *Ballard*, 19 Wis. 634; *Harper* v. *Rowe*, 53 Cal. 152; *Fredwell* v. *Peterson*, 51 Cal. 637; *Case* v. *Dean*, 16 Mich. 12.

BARTHOLOMEW, J. The object sought to be attained by this action is, in effect, the cancellation of certain tax sale certificates upon realty in the City of Fargo, and to permanently enjoin the issuance of any deeds upon such certificates. The plaintiff is the representative of the fee owners of the realty, and the defendant is the tax sale purchaser. The validity of the taxes in the City of Fargo, for the years 1890 to 1893, inclusive, is attacked. The basis of the attack consists in alleged under valuations by the assessors,

and omissions from the assessment roll. There is no claim that plaintiff's land was assessed in excess of its actual value, or that it was exempt from taxation. But it is claimed that by reason of such under valuation, and omission of other property, plaintiff's taxes were much larger than, in justice and equity, they should have been. It is also claimed that there was no valid levy of taxes for said years either by the county commissioners or city council. There was a trial by the court. Plaintiff prevailed, and the case comes into this court, on defendant's appeal, for hearing · on the merits. There is no real conflict of evidence upon any point. It is simply a question of the legal effect of the competent testimony introduced upon trial. On the question of assessment, the testimony shows that the Columbia Hotel in the City of Fargo, was worth, including grounds, building, and furniture, at least $100,000. This property was assessed for less than $20,000. Other property known as the "Bishop Shanley Property," was assessed at less than than 20 per cent of its value. We may dismiss this piece of property, however, with the statement that the board of equalization remitted all taxes thereon upon the grounds that the property was used exclusively for church purposes. No complaint is made of the action of the board; hence the assessment becomes immaterial. There was also in the City of Fargo a tract of land, valued by witnesses at $75,000, belonging to the Northern Pacific Railroad Company, but outside of the right of way, which was entirely omitted from the assess-roll. On the right of way of said railroad company, which is 400 feet in width, and extends across the city from east to west, were many valuable warehouses, and a large hotel. The ground upon which the buildings stood was not assessed by the city assessor, although the buildings themselves were properly assessed. Our statutes (Ch. 135, Laws 1890) require the state board of equalization, at its August meeting in each year, to assess at its actual value the franchise, roadway, roadbed, rails, and rolling stock of said railroad company. In each of said years this property was assessed by said board at $2,500 per mile. This,

according to the testimony, is only about one-eighth of its actual value, or of what it would cost to reproduce it. The farm lands of Cass County, in which the City of Fargo is situated, were assessed during said years at about one-half what witnesses swear they are worth. Do these facts render the assessment absolutely void, and the taxes based thereon illegal? It will be at once perceived that these objections urged against the taxes are very far-reaching. If sustained in their entirety, they must invalidate the taxes for the years in question, not only in the city of Fargo and County of Cass, but throughout the entire state. This would result in such a flood of litigation, such disturbance of titles, and such confusion and chaos in the public revenues, that, unless forced thereto by well settled and plain rules of law, we should hesitate long before adopting a ruling that involves such unfortunate results. Taxation is, at its best one of the most fruitful sources of litigation known to the law. It is a proceeding in *invitum*, and one which the average taxpayer seems to feel in duty bound to defeat when possible. States, counties, and municipalities can be sustained only by the expenditure of a certain amount of revenue. This revenue can be obtained only through the exercise of the sovereign power of taxation. To obtain this necessary revenue the state delegates to the various counties and municipalities this sovereign power. It necessarily follows that many men participate in the exercise of this power,—men of widely variant minds, and men subject to those frailties of judgment from which no man is entirely exempt. Uniformity of taxation is demanded by that section of our constitution (section 176) which declares that "laws shall be passed taxing by uniform rule all property according to its true value in money." It has ever been the aim of the legislature to realize this universal demand of constitutional law. Nevertheless, absolute uniformity and equality in taxation has ever remained a Utopian project,— accessible in theory, but never reached in practice. Inequalities and injustice in taxation, more or less pronounced, always have existed, and, from the necessities of the cause, it would seem

that they must exist. But this has not generally been supposed sufficient to invalidate a tax. If it were, the collection of revenue would instantly and permanently cease. Long before the courts ruled upon the subject, the common sense of mankind united in declaring that it were better that the individual should suffer the slight injustice, rather than that the wheels of government should stop. But that a tax may be invalidated by reason of matters connected with the assessment and levy is an undisputed proposition. It remains, then, to determine in this case whether the matters complained of do or do not invalidate the tax in this case, for it is conceded that plaintiff must fail in the action unless the taxes for which his lands were sold were void. And, in discussing this question, we repeat what we said in *Farrington* v. *Investment Co.*, 1 N. D. 102, 45 N. W. 193: "Respondent attacks the validity of the tax, and the burden is upon him to establish its invalidity; and it is not enough, for the purposes of this case, that the court cannot be able to say from the evidence that the tax is valid. The presumption is that the tax is valid, and and this presumption necessarily extends to every act upon which the tax in any measure depends. The court must be able, upon the evidence, to pronounce judgment against its validity." See cases cited.

The first attack in this case is directed against the assessment. The assessor is the person who initiates the tax proceedings. An assessment is absolutely necessary to any valid tax. The law requires the assessor to assess all property not by law exempt from taxation, and to assess it at its actual value. Necessarily, in this process, two things are left to the judgment of the assessor: He must say primarily what is the actual value of the property. To do this with any approach to accuracy requires broad knowledge, extended experience, and excellent judgment. He must also say whether or not any given piece of property belongs to any of the classes which are by law exempt. Simple as this may appear, it is often a difficult and delicate task. The law exempts from taxation all property of the United States, of

the state, and of the county and municipal corporations; also all property used exclusively for school, religious, cemetery, or charitable purposes. To fix the title of property, or declare the use to which it is exclusively devoted, requires the highest order of judgment, and often a considerable knowledge of law. But the duty of deciding these matters must be lodged some where, and the legislature has seen proper to lodge it primarily with the assessor. And in deciding these matters the assessor acts as a judicial officer. See *Farrington* v. *Investment Co., supra,* and authorities cited; also *Tyler* v. *Cass Co.,* 1 N. D. 369–383, 48 N. W. Rep. 232, 234. This being true, and the determinations of the assessor being in the nature of judgments, it is fundamental that errors and mistakes of judgment while acting within his jurisdiction do not invalidate the assessment. This very question of under valuation and omission from the assessment roll has frequently been before the courts, and, unless accompanied by fraud either in fact or law, we find no case, save in Wisconsin, where it has ever been held to invalidate the tax. In *Dillingham* v. *Snow,* 5 Mass. 547 (decided in 1809), the court, in an opinion by Chief Justice Parsons, ruled the point squarely. The action was trespass against the assessors by one whose property had been seized for taxes. It was shown that the assessors had purposely omitted the real estate of non-residents from the assessment roll. The court held that there was no authority for so doing, and that it was a violation of a statutory provision. It is then said, "The last question is whether, in consequence of this irregularity, the assessment complained of is void, and the assessors answerable in this action as trespassers with force and arms." It will be noticed that the liability of the assessor is made to turn upon the single point of the validity of the assessment. The learned jurist, among other remarks exceedingly pertinent to this case, says: "It deserves great consideration before we decide that the assessment, through an error in judgment or mistake of the assessors, is void, so that no part of it can be collected." And again: "Now, when judicial officers, deriving their authority from the

law, mistake or err in the execution of their authority, in a case clearly within their jurisdiction, which they have not exceeded, we know of no law declaring them to be trespassors *vi et armis.* If the law were otherwise respecting assessors, who, when chosen are compelled to serve or pay a fine, hard indeed would be their case. But the same law must apply to them as to inferior judicial officers." And in conclusion: "But we are all satisfied that for an error in judgment committed by the assessors, in omitting to assess some taxable estate, they are not answerable as trespassers with force and arms." *Merritt* v. *Farris*, 22 Ill. 303, was a case where taxable property had been omitted from the assessment roll, and it was urged that the tax was void because the assessment was a violation of their constitutional provisions requiring uniformity of taxation. But the court refused to entertain the thought that the constitution makers ever intended that the omission of the taxable property by an assessor should invalidate the entire tax, and thus defeat the collection of all revenues for the year. Indeed, there is an intimation in that case that the only remedy of the taxpayer, even for a corrupt omission by the assessor, would be a personal action against the derelict officer. This case was expressly approved in *Dunham* v. *City of Chicago*, 55 Ill. 357, and *Spencer* v. *People*, 68 Ill. 510. The case of *Albany and West Stockbridge R. Co.* v. *Town of Canaan*, 16 Barb. 244, while a case of over valuation, yet the plenary power of the assessor acting within his jurisdiction is fully recognized. Says the court: "Though it could be demonstrated that the assessors had erred, and that egregiously, in this judgment, no tribunal has been endowed with power to correct such error. Like the verdict of a jury, if founded on correct principles it must stand, however much its conclusions may surprise us." In *Williams* v. *Inhabitants of School District No. 1*, 21 Pick. 75, the assessors intentionally omitted to tax one of the inhabitants of the district; and the court, through Chief Justice Shaw, said: "If this was done through error of judgment, or any error or mistake of the law in this respect, it does not invalidate the whole tax. The

case shows nothing more." From the case of *People* v. *McCreery*, 34 Cal 432, we quote one of the head notes: "The omission of an assessor to assess certain parcels of property subject thereto, whether arising from a misapprehension of the law, or by giving effect to void provisions of statute, or a mistake of fact, will not invalidate his general assessment list." The case of *Van Deventer* v. *Long Island City*, 139 N. Y. 133, 34 N. E. Rep. 775, is very much in point upon the question of the legality of this assessment. That action, like this, was brought to set aside tax sales running through a number of years, and on the ground that in each of said years a large amount of taxable real estate in the city had been intentionally omitted from the assessment roll. But the court said: "The assessors in making the assessments acted judicially, and if they omitted any property from the assessment rolls, either by mistake or design, the entire assessments are not thereby rendered invalid. An assessment roll is in the nature of a judgment, and it was never heard that a judgment rendered by an officer exercising judicial functions was void because, by a mistake or design, he had made it too large or too small, in a case where he had the jurisdiction, and acted within his jurisdiction." See, also, *Henry* v. *Town of Chester*, 15 Vt. 460; *Spear* v. *Town of Braintree*, 24 Vt. 414; *State* v. *Platt*, 24 N. J. L. 108-120; *Insurance Co.* v. *Yard*, 17 Pa. St. 331-339; *Watson* v. *Inhabitants of Princeton*, 4 Metc. (Mass.) 599; *Muscatine* v. *Mississippi & M. R. Co.*, Fed. Cas. No. 9,971.

To our mind, the reasoning of the foregoing cases is unassailable, and they furnish us ample authority for holding that any error of judgment upon the part of an assessor in fixing the value of property for taxation, however great, if not such as to show fraud on his part, will not invalidate his entire assessment; nor will an omission of taxable property from the assessment roll, whether arising from inadvertence or design, through a mistake of fact or law, invalidate such assessment. We are aware that in Wisconsin this doctrine is not admitted to the extent stated. In that state the cases are largely based upon the opinion in *Weeks*

v. *City of Milwaukee*, 10 Wis. 242.  In that case valuable property (a large hotel) was admitted from the assessment roll, not because there was any pretense that it was exempt under any state law, but because the city council, deeming the hotel an advantage to the city, had directed that it be omitted.  This was held to invalidate the entire assessment.  But even there we find in the opinion this language, on page 264.  "Omissions of this character, arising from mistakes of fact, erroneous computations, or errors of judgment on the part of those to whom the execution of the taxing laws is entrusted, do not necessarily vitiate the whole tax."  But in *Kneeland* v. *City of Milwaukee*, 15 Wis. 454, and *Hersey* v. *Supervisors*, 16 Wis. 198, and *Johnson* v. *City of Oshkosh*, 65 Wis. 473, 27 N. W. Rep. 320, the able Supreme Court of that state distinctly held that the assessor, in omitting from the roll property which he believed to be by law exempt, vitiated the entire tax, notwithstanding the good faith of the assessor.  These cases are greatly relied upon by respondent.  But we think the application of such a doctrine to judicial officers is attended with great danger.  We know of no instance of its application to any other judicial officer, and we know of no reason why assessors should be made an exception.  The great weight of authority is against it.

We do not, in this opinion, discuss the question of the effect upon the assessment of fraud in law or fraud in fact upon the part of the assessor, because we do not deem such a question involved.  There is an allegation of fraud in the pleadings, but it is entirely unsustained by the proof.  We will briefly refer to the testimony, in order to show that this case come clearly within the principles we have announced:  The same party was assessor in the City of Fargo during all the years in question, and for several years prior thereto.  He gave some general testimony as follows: "In these various years, when assessing property in the City of Fargo, and those places over which I had jurisdiction, I assessed the entire property of the city equitably, and on the same basis

of valuation, and according to a true and a fair valuation thereof, as I understood it." And again: "I state that there was never any property intentionally omitted from my assessment roll; that is, property which I regarded as taxable property. The county auditor makes the assessment roll, and, where I have not put values against his descriptions, it is because, to the best of my knowledge, that the property is exempt under the law." Concerning the Columbia Hotel, he testified that he assessed the lots the same as other lots in the neighborhood, and, when it was first completed, assessed the building at $30,000. This the board of equalization, on application of the hotel company reduced. Subsequently, in fixing the value, he took into consideration the fact that it was not paying property. The assessment was probably too low, but it was a clear error of judgment upon the part of the assessor. Concerning the property of the Northern Pacific Railroad Company, outside the limits of the right of way, it appears that in 1888 the assessor assessed this property, and the attorney for the company appeared before the board of equalization, and had the assessment annulled on the ground that it was not liable to taxation, by reason of the law taxing railroad companies on gross earnings. Thereupon the assessor deemed such property exempt for that reason, and did not assess the same. The evidence need not have gone to that length. We quote again from *Van Deventer* v. *Long Island City, supra*: "While it was found by the trial judge that the assessors intentionally and purposely omitted to assess the real estate, it was not found that they made the omission knowing that the real estate was liable to assessment and taxation. It was a legitimate inference, under the facts found, that the assessment was omitted by the assessors, in the exercise of their judgment, under the belief that the real estate thus situated was not liable to taxation." This disposes of the attack upon the assessments of the city assessor. But it is alleged that farming lands in Cass County were assessed only at $6 and a fraction per acre, while they were worth $10, and witnesses swear that they were worth the latter sum, or more. The

witnesses differ in their estimate, clearly showing that it is a matter of opinion, and there is nothing whatever in the case indicating in any way that the assessment made by the assessor did not represent his honest judgment as to valuation; and when we remember that his assessment, without material alteration, passed the scrutiny of both the county and state boards of equalization, whose sworn duty it is to raise the property to its true value, if under valued, we find that the judgment of the assessor had fair support, although it needs none for the purposes of this case.

There remains yet to be considered the assessment made by the state board of equalization upon the main line of the Northern Pacific Railroad, and, in considering this question, we must keep constantly in mind the fact that the taxes are presumed to be valid, and the burden rests upon the respondent to establish their invalidity. This he claims he has done, by showing that the valuation, as fixed, does not represent the judgment of the board as to the actual value of the property. This claim is based upon the record of the proceedings of the said board, as introduced in evidence. During the sessions of said board each year, there was introduced and passed a resolution; the wording being the same in each instance, except the year named. We quote the preamble to the resolution: "Whereas, there is a question as to the legal right of the State of North Dakota to assess the right of way of the main line of the Northern Pacific Railroad Company for taxation, and, in order to compromise and secure the collection of taxes upon such right of way for the year 1891 without litigation, it is deemed advisable to assess such main line at less than, in the judgment of this board, should otherwise be assessed, resolved," etc. It may fairly be claimed for this preamble that it shows that the valuation fixed upon the property was less, in the judgment of the board, than the actual value of the property. But there was another question involved—a question which the board of equalization, sitting as a board of assessors, was bound to consider—and that was whether or not

the property could be taxed by the State of North Dakota. It is matter of notorious knowledge in this state that that question arises on the language contained in the original charter of the Northern Pacific Railroad Company, as granted by the United States. That charter was granted in 1864, long before the State of North Dakota was carved out of the Territory of Dakota, and it contains this language: "That the right of way through the public lands be and the same is hereby granted to the said Northern Pacific Railroad Company, its successors and assigns, for the construction of a railroad and telegraph as proposed. * * * Said way is granted to said railroad to the extent of two hundred feet in width on each side of said railroad where it may pass through the public domain, including all necessary ground for station buildings, work shops, depots, machine shops, and switches, side tracks, turn tables, and water stations; and the right of way shall be exempt from taxation within the territories of the United States." 13 Stat. 367. A casual reading of this language shows that the right of the State of North Dakota to tax the right of way of the Northern Pacific Railroad Company is indeed in doubt. It is a question of greatest importance to this state, and in the condition of this record; and, with the parties here before us, it would be highly improper for this court to, in any measure, intimate an opinion on this subject. We do not do so. But we do say that if the preamble quoted, or if this record as a whole, established it as a fact that, in the judgment of the board, the State of North Dakota had the right to tax this property, then, indeed, the validity of this entire tax would be a grave question, and one upon which we find no authority. We must be permitted to doubt the power of any board of assessors to compromise and fritter away public rights which they believe to exist. But the record in this case does not show that such was the judgment of the board, nor have we a right to presume that such was their judgment, because that requires us to presume that they did, or attempted to do, an unlawful thing. Rather, it is our duty, in the support of this tax, to presume that this low

valuation was fixed because, in the judgment of the board, the property was exempt from taxation. Nor is this presumption inconsistent with the fact that the board placed a valuation on the property. They were the agents of the state charged with the duty of providing revenue for the state; anxious to make that revenue as ample as could reasonably be done. If the board knew—and the preamble clearly indicates that it did know—that the railroad company, in the uncertainty, surrounding the question, was willing to pay something rather than litigate, the board might readily conclude that its duty to the state required it to assess the railroad property to the last farthing that could be collected without forcing a litigation that might demonstrate that the railroad company was not required to pay anything. Upon that theory, if thereby it injured anybody, it was the railroad company; and, to the extent that it injured the railroad company, it benefited all the other taxpayers of the state, including respondent, and they could not be heard to object to such action. Respondent failed to prove that the assessment of the railroad company was invalid.

Respondent also pleads that there was no valid levy of taxes for the years included in the tax sales, and in this court he urges that the evidence supports the allegation. The first attack is upon the state levy for the year 1890. Section 48, Ch. 132, Laws 1890, which went into effect March 11, 1890, provided that the state tax should be levied by the legislative assembly. The legislature that passed that act levied no tax whatever for the year 1890. That was our first year of statehood. Prior thereto the territorial tax had been levied by the territorial board of equalization. Comp. Laws, § 1588. When the state board of equalization—which succeeded to the general duties of the territorial board—met in August, 1890, it proceeded to levy a state tax within the limit prescribed by law. The counties were notified of the tax so levied, and it was carried out on the tax lists. When the legislature convened in 1891, it proceeded by chapter 104 of the laws of that session to legalize the tax so

levied by the state board of equalization, and declare it as valid for all intents and purposes as if made by the legislative assembly as provided by law. The state had a right to levy a tax. The levy thus sought to be invalidated was one that the legislature might originally have made, or might have authorized the board of equalization to make. Clearly, under the authorities, the legislature could cure this defective levy. See Desty, Tax'n, 617, 618, and the cases cited; Cooley, Tax'n, 300, note 2. It may be proper to add that Ch. 106, Laws 1891, removed the duty of levying the state tax from the legislature, and placed it again upon the board of equalization.

The validity of the levy made by the county commissioners of Cass County in each of said years is denied. This denial is based upon an alleged failure of the board to comply with the provisions of said section 48 of the revenue law of 1890. That section provides that the county tax shall be levied by the county commissioners at the July meeting in each year, and that "such taxes shall be based upon an itemized statement of the county expenses for the ensuing year, which statement shall be included in the published proceedings of the board," etc. It is claimed that the levy was not based upon the required statement. To establish this claim, the respondent introduced in evidence the record of the levy made by the county commissioners each year. This record shows that in each of said years the county levy was made by resolution duly passed, which embraced a levy of specific amounts for some 17 different and specific purposes, all of which were ordinary and legitimate county expenses. We note some of them:

| | |
|---|---:|
| For interest and sinking fund | $22,000 |
| For roads and bridges | 500 |
| For District Court | 10,000 |
| For Justice Court | 3,000 |
| For county jail | 1,500 |

The entire levy is thus itemized, and a specific amount levied for each item. No part of the proceedings of the county board is offered in evidence, save the offer and adoption of this resolu-

tion; and the auditor certifies that the same is a true copy of the tax levy, as the same appears in the record of the proceedings of the county commissioners. We fully agree with counsel that under the laws it was mandatory upon the commissioners to make an itemized statement of the county expenses for the ensuing year, and that such statement should be made a part of the record of their official proceedings. In the judgment of my associates, the evidence introduced affirmatively establishes the fact that this was done. The law requires no particular form for this statement—no particular manner in which it should be made. The record shows a particular amount designated for each item of county expenses for the ensuing year. This being, in substance, what the law requires, and all that it requires, it is immaterial in what form or connection it may be found in the record, so long as the law is silent upon those points. Said § 48 requires the taxes to be levied in "specific amounts." But such taxes must be "based upon an itemized statement of county expenses for the ensuing year." The specific amounts must correspond with the itemized statement. Hence, it is not necessary that the figures be duplicated in the commissioners' record. Appearing once therein in the form required by law, showing clearly the amount which the commissioners intend shall be expended for each item of county expenses for the ensuing year, it in no manner impairs their identity as an itemized statement that the same figures designate the amount of the levy for such purposes for the ensuing year. For these reasons my associates conclude that the respondent failed in his attack upon the county levy. I fully concur in this conclusion, but prefer to base my judgment, not on the ground that the record affirmatively shows that the levy was good, but upon the ground that the record does not show that the levy was bad. In other words, respondent failed to overcome the legal presumption that the levy was valid. While the levy must be based upon an itemized statement, such statement is no part of the levy. The two things are entirely distinct. They need not be made at the same sitting, or at the same

session. The only part of the commissioners' record here intro-
duced pertains to one sitting, and to the levy proper. I find
nothing to negative the idea that a complete and technical item-
ized statement of county expenses for the ensuing fiscal year may
not be found elsewhere in their records.

The next attack on the levy to be found in the record is that
made upon the levy of the city taxes during the years in ques-
tion. The City of Fargo is, and was during said years, acting
under the general city incorporation law, being § § 844 to
1021, inclusive, of the Compiled Laws. Section 880 requires that
"the yeas and nays shall be taken upon the passage of all ordi-
nances and upon all propositions to create any liability against
the city or for the appropriation and expenditure of its money."
It is urged that in making the city levy the yeas and nays were
not taken, and the record of the city council is introduced to
prove it. The record shows that the yeas and nays were called,
but it does not show who voted "Aye," or who voted "Nay." It
simply says, "Passed by an aye and nay vote, all voting aye."
We will assume that the law requires in the cases specified that
the ayes and nays shall be entered at large in the journal. Still
we think this attack must fail also. There are three classes of
cases where the statute requires that the yeas and nays shall be
taken: First, upon the passage of all ordinances; second, upon
all propositions to create any liability against the city; and, third,
upon all propositions for the appropriation or expenditure of the
money of the city. That a tax levy is not a proposition to create
any liability against the city, or for the appropriation or expendi-
ture of its money, is too clear for discussion. Is it an ordinance?
Black defines an "ordinance" to be: "A rule established by
authority; a permanent rule of action; a law or statute." See
Black, Law Dict. In Dill. Mun. Corp. § 307, (4th Ed.) it is said
that in this county the word is "limited in its application to the
acts or regulations, in the nature of local laws, passed by the
proper assembly or governing body of the corporation." In
*Citizens' Gas & Min. Co.* v. *Town of Elwood,* 114 Ind. 332, 16

N. E. Rep. 626, Judge Elliot says, "It means a local law prescribing a general and permanent rule." A tax levy comes within none of these definitions. It is not a law—not a rule of action. It has no permanency. Once acted upon, it is *functus officio*. It carries no command to the public generally. It is not a thing that can be violated. It has no single element of what is generally understood to be an ordinance. It never properly, and seldom in fact, assumes the form or name of an ordinance. It is generally made by a resolution of the proper body. Such was the case in the levies under consideration. And for the passage of that resolution there was no statute requiring that the yeas and nays be taken. It is true that section 956, Compiled Laws, requires the city council, in each year, to pass an ordinance to be termed the "Annual Appropriation Bill," but the levy was not based on this ordinance. Section 922, Compiled Laws, declares that the city tax levy shall be "based upon estimates furnished by the city auditor or a committee of the city council," and there is no complaint that this basis was lacking. Possibly these remarks may not apply to the levy of 1893, as Ch. 33 of the Session Laws of that year made some changes in the law on this subject; but, as the tax sale certificates relied upon by appellants were based on the taxes for 1890 and 1892, we are not called upon to further notice the levy for 1893. The levies upon which the certificates were based were good, beyond question.

Respondent also urges that the sale was invalid because the interest and penalty charged against the property was 1 per cent. too much. Assuming this to be the case, we are nevertheless clear that, in view of the provisions of § § 72 and 82 of the revenue law of 1890, (Ch. 132) the sale was not thereby rendered invalid. Section 72, in terms, declares that no tax sale shall be set aside or declared invalid unless for certain reasons therein specified, and a sale for an excessive amount is not one of the cases so specified. Section 82 vests in the owner of the fee the right to obtain from the auditor a warrant on the county treasurer for any amount paid into the treasury on the sale of any piece or parcel

of land for taxes in excess of the amount due upon such piece or parcel at the time of the sale. If, for any reason, whether because the purchaser sees fit to bid more than the amount of the tax, or because the auditor, in settling, makes a mistake in computing the amount due, the purchaser pays more than the amount due at the time of the sale for taxes assessed against the property, the owner can call upon the auditor to give him a warrant upon the treasurer for such excess. Should the auditor fail to comply with that request, in a proper case mandamus would lie to compel him so to do. It follows that no injury can accrue to the owner from the sale of this property for an amount in excess of the taxes due, and it is therefore entirely reasonable that it should be provided in another section (§ 72) that such a sale should not be set aside as invalid.

It is also urged that the law under which such sales were made (§ 70, Ch. 132, laws 1890) is void because it provides for a sale of the entire tract, and there is no provision for the sale of any fractional part thereof. We are not pointed to any constitutional provision that this law violates, but we are cited to two cases in Virginia (*Martin* v. *Snowden*, 18 Grat. 100, and *Downey* v. *Nutt*, 19 Grat. 59) as announcing that doctrine. These cases both arose under the acts of congress for the collection of direct taxes in the "insurrectionary districts" during the war of the Rebellion; and the point is based upon the theory that the federal government is a government of limited powers, having only such powers as are expressly delegated to it, and that while congress has power to lay and collect taxes, and power to pass all laws which shall be necessary and proper to carry that power into execution, yet it was not necessary that the whole tract should be sold in order to collect the tax, and therefore, when congress so directed, it was exercising a power that had not been delegated to it. But, of course, this reasoning has no application to a state legislature. We think the legislature had the power to pass the act. Its propriety is not for us to consider.

The District Court of Cass County will set aside its judgment

herein, and enter judgment dismissing the action, with costs of both courts in favor of appellant.

Reversed. All concur.

### ON REHEARING.

An earnest appeal has been made to us to order a reargument of this case. We do not think we would be warranted in so doing, but it is proper that we briefly notice some of the claims put forth by the learned counsel in his petition for a rehearing.

It is urged that this is a statutory action, given by § 72 of the revenue law of 1890, and that under that statute it was only necessary for the plaintiff to set forth his record title, and that thereupon it became incumbent upon defendant to affirmatively plead his title under the tax proceedings, and that the burden rested upon him to establish the validity of such proceedings, at every step, by affirmative proof. In this, counsel is in error. Said § 72 gives no right of action. A careful perusal of the entire section will show that its purpose was to remove the statutes of limitations theretofore existing against the several actions enumerated in the statutes. True it is that under § 5904, Rev. Codes, being § 5449, Comp. Laws, a party may bring an action to determine conflicting claims to real estate, in which he need only set forth his title, and allege that the defendant claims an estate or interest in the land. To this challenge the defendant must respond by setting forth the basis of his estate or interest, and, of course, the burden is upon him to establish his affirmative allegations. But this procedure was never exclusive. A party always had the right to bring an ordinary action in equity to remove a cloud from his title, and in that form of action it was always necessary for him to set forth the matters constituting the cloud, and establish their illegality. In this case plaintiff chose the latter method. He set forth defendant's claim of title, and set forth in detail the facts which, from his standpoint, rendered such claim invalid. The defendant might content himself with a denial of these facts, and upon the trial of such

issue the ordinary rules of evidence would prevail. The burden was upon plaintiff, and the presumptions against him.

Complaint is made of the summary manner in which the opinion disposes of the Island Park property. We think it justified by the record. But, however that may be, we cannot accept the evidence of the assessor as to the value of the property at the time of the trial—years after the assessment—as contradicting his evidence that at the time of the assessment he assessed all property at what he deemed its fair and reasonable value. Nor can we accept his testimony that such property was not used exclusively for church purposes as having any bearing upon the case. If the board of equalization, in remitting the taxes on the property, honestly believed it to be exempt as church property,—and there is not even an intimaton to the contrary,— then clearly, under the authorities cited in the opinion, their mistake would not invalidate the tax.

It is again urged that a statute which authorizes a sale of the entire tract, when not necessary in order to realize a sufficient sum to pay the taxes and charges, is a violation of the constitutional provision against taking property without due process of law. This might be true, if the statute contained no provision that the surplus should go to the land owner. When a statute directs that only so much land shall be sold as is necessary to pay the tax, then the sale of an entire tract without offering a part, or without some evidence that the sale of the whole was necessary, is always void. Some of the cases on this point will be found collated in note 2, Cooley Tax'n p. 496. And the same has been held where the statute was silent as to the amount to be sold. See cases in note 1, same volume and page. But a statute directing the sale of the entire tract, reserving the surplus for the land owner, is expressly recognized by Mr. Cooley as a proper method for saving something to the owner. See page 495. This has long been the exclusive method in many of the states, and no case has been found to question the validity of such a statute, save the two cases in Gratton cited in the opinion, and which are

confined to a federal statute. Upon the point that the sale was for a greater amount than was legally due under the assessment and levy, the opinion was prepared upon the theory that respondent's contention was correct on the facts, and we are not prepared to recede from what we said on that theory. But a close inspection of the tax lists shows that a decision of the point was not necessary. The sale was for the correct amount, and no more.

By inadvertence one point raised in the case was not noticed in the original opinion. In 1890 the state board of equalization, after equalizing the valuations throughout the state, adopted a motion, duly made, to raise the assessed valuation of all real estate 10 per cent. The motion recited that it was "for the purpose of raising revenue for the state." This language was unfortunate, in that it subjected the board to criticism for performing an act which it had a perfect right to perform. All taxation is for the purpose of raising revenue. The statute not only gave the board of equalization the power, but it made it the absolute duty of the board, in case property was assessed below its actual value, to raise the assessment to the actual valuation. There is no suggestion that this power was exceeded. Should we admit that a wrong motive was assigned, still that would not invalidate a proceeding strictly enjoined upon the board as a duty. Neither in the briefs of counsel nor in the oral argument was there any extended discussion touching the validity or effect of the so called curative act of 1891,—being Ch. 104 of the Session Laws of that year,—passed for the purpose of curing the levy for state purposes made by the state board of equalization in the year 1890. It must be conceded that such board had no authority whatever to make such levy at the time it purported to make the same. The legislature of 1890 had clothed itself with the authority, but had adjourned—no doubt inadvertently—without exercising the power. The question arises, then, whether or not it was competent for the legislature, by a subsequent enactment, to validate this levy so made without authority. This question

has received elaborate consideration in the petition for rehearing, and authorities are cited which seem to hold contrary to the view expressed in our opinion. The text in Desty on Taxation is particularly strong. It is there said, at page 620: "The curative power of the legislature can reach things voidable only, not void, —defects of execution only, not of authority or jurisdiction,—and is confined to defective proceedings under previous legislative authority." In note 12 the author cites a large number of cases to support his text, mostly from Wisconsin. We have examined these authorities with care, and we think the language of the author is broader than these authorities warrant. Many of the cases cited relate to efforts to cure, by subsequent legislation, judicial proceedings which were void by reason of want of jurisdiction of the court. It is the universal holding of the courts, as well as the universal understanding of the bar, that this cannot be done. But we believe a far less rigorous rule is applied to the acts of officers and official boards generally. It is true that in *Kimball* v. *Town of Rosendale*, 42 Wis. 412,—a case involving the acts of the town board of supervisors,—the exact language is used which we have quoted from Mr. Desty's valuable work. But the language was not necessary in the case. The town had assessed and levied a special and unauthorized tax, which the legislature subsequently undertook to validate. It was held that this could not be done, because the constitution of Wisconsin deprived the legislature of the power to pass any special law for the assessment and collection of taxes, and, as the legislature could not have originally authorized the tax, of course it could not subsequently validate it. Moreover the learned jurist who wrote the opinion in that case introduced the language quoted in these words: "Perhaps the true limit of the curative power of the legislature, as gathered from all the authorities and sanctioned by principle, is, or ought to be, that it can reach things voidable only, not void," etc. And following the language quoted he says, "It is true that many most respectable authorities do not set so narrow a limit to the power." An examination of

the Wisconsin cases will show that the Supreme Court of that state did not adopt the narrow limit. In *Single* v. *Supervisors*, 38 Wis. 363, Lyon, J., says: "For the purposes of these appeals, it will be assumed that the proceedings of the board of supervisors on the 15th of March and the 4th of September [1873] were without authority of law, and but for the legislation of 1874, that the same are entirely void. We are thus brought at once to consider and determine the validity and effect of that legislation." And a unanimous court, of which Chief Justice Ryan, who wrote the opinion in *Kimball* v. *Town of Rosendale*, was a member, held that the subsequent legislation validated the void proceedings of the supervisors. See, also, opinion of Dickson, C. J., in *Fisk* v. *City of Kenosha*, 26 Wis. 33. These cases are not questioned in the case in 42 Wis. But, conceding that cases may be found which seem to support the doctrine of the text in Desty, we think the better authority is the other way. The case of *Boardman* v. *Beckwith*, 18 Iowa, 292, is very much in point. There a general revenue law had been passed in 1858 repealing all prior laws on the subject, but the statute failed to make any provision whatever for the assessment and levy of any tax for the year 1858. Notwithstanding this omission, the officers and boards charged with those duties under the old statutes proceeded to assess and levy a tax, and the next legislature passed an act validating such unauthorized proceedings; and the court, in sustaining such curative act, said: "The point made upon this legislation is that it was not competent for the general assembly to thus legalize the levy and assessment of 1858; that, as there was no law at the time authorizing such levy and assessment, all proceedings thereunder, notwithstanding the curative act, were illegal and void. Whatever doubt there might be if the act of 1860 had taken effect after the sale and purchase under which plaintiff claims, there can be no room for controversy when it is remembered that it was passed and took effect long prior to that time. [This act took effect May 9, 1860.] That it is competent to thus legislate, we entertain no doubt. The power of the legislature to pass acts of

this character, conducive as they are to the general welfare, and based upon considerations of controlling public necessity, is, in our opinion, undoubted. It does not interfere with vested rights, nor impair the obligation of any contract. This case was approved and followed in *Land Co.* v. *Soper*, 39 Iowa, 112, and again in *Richman* v. *Muscatine Co.*, 77 Iowa, 513, 42 N. W. Rep. 422. The case of *Grim* v. *School Dist.*, 57 Pa. St. 433, goes even further. There a tax had been levied without lawful authority. It was paid under protest, and suit brought to recover the money so paid. After the action was brought the legislature passed a curative act validating the tax. The court, in an exhaustive and well reasoned opinion, among other things says: "It has not been pretended, and could not be, that the legislature had not the power antecedent to authorize it. If so, they could cure any irregularity or want of authority in levying it by a retroactive law, even though thereby a right of action which had been vested in an individual should be divested. It is within the principle of all the decisions of admitted authority." This case is followed, and the above language quoted with approval, in *City of Chester* v. *Black*, 132 Pa. St. 568, 19 Atl. 276, and the principle is reaffirmed in *Donley* v. *City of Pittsburg*, 147 Pa. St. 348, 23 Atl. 394, and is announced by the Supreme Court of Minnesota in *Kunkle* v. *Town of Franklin*, 13 Minn. 127 (Gil. 119.)

In this case, as we said, in effect, in the original opinion, the tax was one which the state was empowered to levy and collect. It was recognized both by the constitution and the statute law, and was within the limits there fixed. It represented the just and equitable amount which respondent ought to pay the state. Its only defect was that it was levied by an unauthorized board. It is undisputed that the legislature might have placed the power to make the levy with the board that did make it. The power had been lodged there previously, and was subsequently placed there again. The curative act was passed, not only before the tax sale, but before the tax became delinquent. No vested right was disturbed. Under the foregoing authorities, which meet our

unqualified approval, the action of the legislature must be upheld.   The other points in the case require no further notice.

Petition denied.