[File No. 6682.]

LEO J. WAGNER, Appellant, v. SOPHIE STROH, Respondent.

(294 N. W. 195.)

Opinion filed September 30, 1940.

*Pearce & Stephan,* for appellant.

*Sproul & Sad,* for respondent.

BURR, J. Plaintiff brings this action to quiet title to the north half of section 22, township 140, range 60 in Barnes county, claiming to be the owner of this half section; alleging the defendant claims interests, liens, and encumbrances upon the land, among which is "a purported 'vendor's lien,' filed for record in the office of the Register of Deeds of Barnes county." He alleges defendant has no claim or lien or interest in this land, and asks judgment "that the title to said premises be quieted as to all of said claims, and that the defendant be forever barred and enjoined from asserting the same."

The answer alleges that the defendant sold this real estate to the plaintiff, and that "there is due and as a part of the purchase price of said real estate the sum of One Thousand Five Hundred and no/100 ($1,500.00) Dollars, payable at the rate of One Hundred Fifty and no/100 ($150.00) Dollars per year commencing on September 30, 1937; and that the plaintiff here has wholly failed to pay any part of said One Thousand Five Hundred and no/100 ($1,500.00) Dollars and that there is due the said defendant the sum of Three Hundred and no/100 ($300.00) Dollars for such unpaid purchase price."

The defendant further claims a vendor's lien for the unpaid purchase price; and, as a counterclaim, realleges the amount due on the purchase price, alleges that the payments for 1937 and 1938 are due in the sum of $300, and prays judgment for that amount, but does not ask that the lien be established.

The plaintiff denies the allegations in the answer and counterclaim;

and in his reply alleges: "The said plaintiff and the said defendant entered into an agreement in words and form as follows:

"'Sanborn, N. Dak.
"'Sept. 30, 1932.

"'To whomsoever this may concern.

"'Know ye that this agreement has been entered into between Leo J. Wagner as party of first part and Mrs. Pious Stroh as party of second part, that party of first part agrees to pay party of second part the sum of Fifteen Hundred dollars (1500.00) in ten equal installments of (150.00) per year for 10 years beginning 5 years from this date with int. at 5% on all past due payments. Providing national conditions warrant between now and that time. That to be decided on by party of first part and party of second part.

"'Leo J. Wagner

"'Witness

"'P. S. Stroh                          Alice D. Wagner, witness.'"

This is reduced to writing and is known as Exhibit B.

Plaintiff further alleges: "That according to said agreement no payments thereunder were to be made unless national conditions warranted said payments between September 30, 1932, and September 30, 1937, and whether national conditions warranted said payments was to be decided by both this plaintiff and defendant. That at no time since the date of said agreement have national conditions warranted said payments, or any of them, nor have both this plaintiff and defendant so decided. That said agreement was wholly lacking in consideration, it is inoperative, of no force and effect, is not binding on said plaintiff, and there is nothing due and owing said defendant thereunder."

The trial court made findings of fact and conclusions of law favorable to the defendant, holding that the plaintiff was not entitled to have this vendor's lien cancelled from the record; that it "is in truth and fact a valid lien for the unpaid purchase price . . . and that the same is in full force and effect and is lien on the above mentioned real estate. . . .

"That said instrument for payment of $1,500 is a valid and binding obligation against the plaintiff.

"That the defendant is entitled to a judgment for the sum of $300 with interest. . . .

"That the defendant is entitled to a dismissal of the plaintiff's action, with prejudice. . . ."

Judgment was entered accordingly, and the plaintiff appeals.

In the first specification of error the appellant demands a review of the entire case in this court. Two specifications deal with alleged errors of the court in the introduction of testimony; nine with alleged errors in the findings of fact; four with alleged errors in conclusions of law; and two allege as errors the order for judgment and the entering of judgment for the defendant.

There is little dispute as to the essential facts. The issues center around the negotiations culminating in and the interpretation to be given to the instrument set forth in the plaintiff's reply, Exhibit B, and we need not discuss the specifications of error seriatim.

Appellant sets forth the facts as he alleges them to be. There is not full agreement as to these, but we summarize his statements as follows:

At one time the defendant owned the land involved. At that time the land was encumbered by a mortgage for $5,000; plaintiff purchased the land in August, 1931, and at that time there was due on the mortgage about $5,500 and delinquent taxes amounting to about $250; the land was deeded to the plaintiff, who assumed this indebtedness and gave the defendant a second mortgage on the land for $2,000; the plaintiff was unable to pay the mortgage, foreclosure was threatened, and plaintiff took steps to refinance the loan. To assist in refinancing, the defendant released her mortgage for $2,000; at the same time, there were negotiations relative to and affecting the debt secured by the mortgage the defendant released; the plaintiff and defendant entered into an agreement whereby plaintiff gave defendant a note for $500, afterwards paid, and the writing known as plaintiff's Exhibit B; and thereafter the plaintiff made two loans on the land, amounting to $6,300, the proceeds of which were used to pay off the first mortgage and the taxes and to make improvements on the land. Later the plaintiff executed a third mortgage on the land to his brother-in-law; and thereafter the defendant executed an instrument which was denomi-

nated a "vendor's lien," and filed the same for record in the office of the Register of Deeds. Thereupon the plaintiff commenced this action.

There is some dispute in the evidence regarding the circumstances surrounding the execution of Exhibit B. It is clear from the evidence that the release of the mortgage and the surrender of the note secured by the mortgage, together with these negotiations which culminated in Exhibit B, were all parts of one transaction, even though they may have covered some appreciable length of time. The defendant surrendered her mortgage interest and cancelled the note, depending upon the promise made her by the plaintiff when he had Exhibit B drawn up, and thus assisted him in refinancing the indebtedness against the land which he owned. He gave a note for $500 and made an oral agreement with her regarding the remaining $1,500.

When the defendant attempted to testify as to what was said at the time Exhibit B was drawn, plaintiff objected on the ground that it tended to vary the terms of a written instrument, and invoked the rules set forth in §§ 5889 and 5899, Compiled Laws of North Dakota 1913, to the effect that:

"The execution of a contract in writing, whether the law requires it to be written or not, supersedes all the oral negotiations or stipulations concerning its matter, which preceded or accompanied the execution of the instrument." § 5889.

"When a contract is reduced to writing the intention of the parties is to be ascertained from the writing alone if possible, subject, however, to the other provisions of this article." § 5899.

It will be noted that defendant never signed Exhibit B. It is more in the nature of a memorandum prepared by plaintiff and showing his version of the agreement.

There is evidence in the record substantiating the finding of the trial court that the plaintiff agreed to pay this $1,500 in its entirety at some time, and not merely a promise to do so if agreeable to himself.

Plaintiff says that Exhibit B sets forth the agreement, and that thereunder he was not required to pay the $1,500 unconditionally. He argues that the provision, "Providing national conditions warrant between now and that time," was a condition which had to be fulfilled before he had any liability at all on this $1,500. His position is that unless national conditions between 1932 and 1937 warranted it, he

would not be required to pay any portion of the $1,500 at any time. He says the oral agreement so provided.

Plaintiff seems to hold that because the parties did not determine that "national conditions" between 1932 and 1937 warranted any payment, therefore, the debt was to be cancelled, and that, as a matter of fact, national conditions did not warrant payment. This involves interpretation of the instrument plaintiff himself prepared. But the parties together were to determine whether conditions warranted or did not warrant payment any time within the five years. Defendant understood it otherwise, and though dunning for payment afterwards, gave plaintiff the benefit of the delay of five years.

This exhibit was drawn under plaintiff's direction and written by his wife at their home, when the defendant, an ignorant, aged widow, who trusted him, was present. She had no one there to advise her. She claims that plaintiff agreed to pay the $1,500 absolutely, and this is borne out by the testimony of another witness. That there was not to be a cancelation of the debt in case national conditions within the five years did not warrant payment (this to be determined by the plaintiff himself) is evident from the last sentence of the exhibit. This says, "That to be decided on by party of first part and party of second part;" that is, by the plaintiff and the defendant mutually. There is no claim that the parties met and decided that national conditions did not warrant the payment.

Because of dispute arising over the need to refinance, the parish priest arranged for a meeting between the parties at his house. He testified that in the discussion between the parties it was agreed "there would be a balance coming to Mrs. Stroh, of $2,000, and she had not got any of it at the time, and at that time Mr. Wagner acknowledged the obligation and promised that he should pay." It is true he was not definite as to the date, but the defendant testified, "When we had our meeting in Father McGeough's house Mr. Wagner stated he would pay $500 in $50 every fall, and interest ($150?), and Father McGeough asked him then, 'And how about the other?' and he says, 'I will take care of that as the contract reads.'"

It is clear that this had reference to Exhibit B, and the plaintiff does not deny it.

Time and again since then, defendant dunned him for some money

under the agreement until at last he told her not to bother him any more. Defendant testified that "I wouldn't go to his place because Mr. Wagner warned me to stay away from him and not pester him or his wife. I never went near the place after that." The plaintiff does not deny that defendant dunned him from time to time and that he told her to stay away; nor does he at any time state that when she asked him for money, he told her there was nothing due under Exhibit B.

When the defendant was asked, "Did he (the plaintiff) ever say to you, Mrs. Stroh, if conditions got bad he would not pay you at all?" she answered, "No, he never did;" and later she testified, "he told me not to cry or worry, that he or Mrs. Wagner would never cheat me out of it." Again she stated, "I handed the note back and mortgage for the $2,000, and he gave me the papers I have now, and he gave me the note for $500; and I was crying and feeling bad, and he told me also I would never suffer because he had an old mother he was looking after and he would do likewise with me."

Clearly, she understood that after the five-year period of delay payments were to be made without reference to "national conditions," for after relating that she had to get $20 a month from the Welfare Board, she said, "I cried and felt bad; I had to wait so long, after he promised to pay some of it in five years' time."

No agreement was reached, no negotiation was made, nor did the plaintiff call for it. Surely, it cannot be contended that if plaintiff refused to assent to the proposition that national conditions warranted payment, the defendant could not recover. He, himself, created this impasse. The preponderance of the evidence sustains defendant's claim that the plaintiff was to pay $1,500 absolutely, though, if national conditions warranted, time of payment would not begin for five years and then he would make the payments. Ordinarily, he should have paid at once, but he was given the benefit of a delay of five years on payments unless the parties decided national conditions warranted earlier payments. They did not so decide, so he had the delay. This interpretation of a somewhat ambiguous instrument is in harmony with the proven fact plaintiff was to pay defendant $1,500, and also in harmony with her subsequent actions.

Our attention has not been called to any statutory method for executing and recording a vendor's lien, nor are we able to find such statute. As said in 2 Jones on Liens, 3d ed. 28, referring to such a lien, "It is a secret, invisible lien, known only to the parties, and to those to whom they may have communicated the fact of its existence." It is a matter between the parties; and recording an instrument for the purpose of evidencing such lien neither adds to nor takes away from the effect of the lien. If defendant has a lien, it exists independent of any attempt to make a record of it.

But the plaintiff comes into court asking not only the cancelation of this written instrument known as a "vendor's lien," for which it must be conceded there is no law permitting recordation, but he also asks it be determined that defendant has no lien whatever and no interest in the land she sold to him, despite the fact that $1,500 of the purchase price remains unpaid.

This is an action to determine adverse claims. True, in Shuttuck v. Smith, 6 N. D. 56, 69 N. W. 5, we hold that this is a proceeding independent of the common-law right to remove a cloud on the title by a bill in equity. Nevertheless, such an action "is essentially an equitable action." Schmidt v. Johnstone, 31 N. D. 53, 153 N. W. 293.

The maxim that he who comes into a court of equity must do equity is applicable to an action to determine adverse claims. Powers v. First Nat. Bank, 15 N. D. 466, 471, 109 N. W. 361, 363. We are not so much concerned as to whether, technically, the defendant has a vendor's lien—we do not reach that question yet—as we are with the equities in this case. Until he offers to do equity, that is, pay the past due instalments, this court will not consider the question of whether the defendant has in fact a vendor's lien. It will be time enough to determine whatever equities there are in favor of the plaintiff in this regard when he offers to do equity.

The finding of the trial court that Exhibit B was in fact an unconditional agreement to pay this $1,500 in ten equal payments is sustained by the evidence. It is also the finding of the trial court that the time has arrived for the plaintiff to make his payments. This latter finding will not be disturbed, and the former finding is clearly correct. We do not consider plaintiff's claim that there is no vendor's lien. He is not in position to assert that claim. The defendant does not ask

for the establishment of a lien. The judgment is modified by striking out the provision stating defendant has a lien; and as so modified, the judgment is affirmed.

NUESSLE, Ch. J., and CHRISTIANSON, MORRIS, and BURKE, JJ., concur.