DUNDEE MORTGAGE TRUST INVEST. CO. *v.* CHARLTON, Sheriff, etc.

*(Circuit Court, D. Oregon.   October 10, 1887.)*

1. TAXATION—ASSESSMENT—OVER-VALUATION.

   Any person who has property listed on the assessment roll of a county for taxation is "interested" in the proceedings of the county board of equalization, and may appear before it, and have redress against an unjust and unequal valuation of property on said roll, to his injury, whether the same is caused by an over-valuation of his own property, or an under-valuation of that of others.

2. SAME—INJUNCTION.

   A person who is aggrieved by the wrongful action of an assessor, in the valuation of his own or other's property for taxation, cannot maintain a suit in equity to enjoin the collection of any portion of the tax resulting from such action, unless he first seeks redress at the hands of the county board of equalization, as provided by statute.[1]

*(Syllabus by the Court.)*

*John W. Whalley,* for plaintiff.
*W. R. Bilyeu,* for defendants.

DEADY, J.   This suit is brought to restrain the county of Linn, and the defendant Charlton, its sheriff, from collecting the one-half of the taxes levied by the county in 1884 on the mortgages owned by the plaintiff on real property therein, amounting to $1,172.85.   From the bill it appears that the plaintiff is a foreign corporation, formed under the laws of Great Britain, and is the owner of promissory notes of the nominal value of $150,348.71, secured by mortgages on lands in Linn county; that the same were assessed by the assessor of said county, in the year 1884, for taxation as real property, under the act of October 26, 1882, at their nominal value, while all real property not under mortgage was only assessed at from one-third to one-half its value; that the tax levied on said assessment of the plaintiff's notes and mortgages amounts to $2,345.90,— one-half of which is in excess of the taxes levied on property generally of the same value, and is therefore alleged to be illegal. It also appears that the plaintiff has paid the one-half of said taxes, and that the county, through its proper officers, will, unless restrained by the decree of this court, proceed to make the balance of said tax by the sale of said notes and mortgages.   The answers of the defendants admit the allegations of the bill, except as to the valuation of the real property not under mortgage, and aver that the same was valued for taxation at its true cash value, as required by law.

The evidence in the case is quite voluminous and contradictory.   But considering the relation of the witnesses to the subject-matter, and the interest which most of them have in the question involved in the controversy, their several means of knowledge, the character of their testi-

---

[1] Where a remedy is provided by statute for the excessive assessment of property, the tax-payer must avail himself of it, at his peril.   New York & C. G. & S. Exchange v. Gleason, (Ill.) 13 N. E. Rep. 204, and note.

mony, and the difference in the value of lands as appears from the assessment roll, and that for which they were sold by the owners, as appears by the county record of conveyances, it is evident that the average valuation of lands in the county, not under mortgage, did not exceed 60 per centum of their "true cash value," and probably not over 50 per centum thereof; such "value," as defined by statute, (2 Laws Or. 1887, p. 1285,) being "the amount such property would sell for at a voluntary sale, made in the ordinary course of business, and not what it would bring at public auction or forced sale." And this discrimination appears to have been the result of a deliberate purpose on the part of the county assessor, and made in accordance with the established practice of his office, and the prevailing power of public opinion.

On these facts, the plaintiff appears to be entitled to an injunction to restrain the collection of so much of this tax as results from this unlawful discrimination between its mortgages and other real property, in the valuation of the same for taxation. *Dundee M. T. I. Co.* v. *Parrish*, 11 Sawy. 92, 24 Fed. Rep. 197; *Cummings* v. *Bank*, 101 U. S. 153. Nor is it material that, at the filing of the bill, the plaintiff had only paid 50 per centum of this tax, instead of 60. All was paid that was then conceded or appeared to be due. That was sufficient to give the company a standing in court to litigate the question; and the fact that the court has, at the end of such litigation, found there was 60 per centum due, does not affect such standing, or the plaintiff's right to relief against the payment of the remaining 40 per centum. *State Railway Cases*, 92 U. S. 617; *Bank* v. *Kimball*, 103 U. S. 733.

But, on the hearing, the defendant made the objection that, conceding the error and injustice of the assessor, the remedy of the plaintiff in the first instance was an appeal to the county board of equalization to correct the same; and that, unless it appears that it has resorted to this means of redress without avail, it cannot have relief in a court of equity. By the statute of the state on the subject of assessing property for taxation, it is made the duty of the assessor to list all lands in the county subject to taxation, and assess them at their true cash value, or what they would bring at a voluntary sale under ordinary circumstances, and a mortgage on land which is a security for a debt is required to be assessed as real property, in the county in which the land lies, for the nominal value of the debt, unless the land is not worth so much. When the assessment is completed, the roll is returned to the county clerk, and public notice is given by the assessor that, on a day named, the board of equalization, consisting of himself, county judge, and clerk, will attend at the office of the latter and publicly examine the assessment roll, and, among the other things, correct all errors of valuation therein. If property has been valued by the assessor "under or beyond its actual value," this board is authorized to make the proper correction; but it cannot increase the valuation of any person's property without first giving him notice to show cause. It is also declared to be "the duty of any person interested to appear" before said board at said time and place. 2 Laws Or. 1887, c. 17.

Counsel for the plaintiff insist that it was not bound to appear before the board of equalization and seek a revision and correction of the assessment in this particular, for the reason, if none other, that it could not be heard, and had no standing there to complain of the under-valuation of other people's property. Neither could it complain of the over-valuation of its own, considered by itself. The injustice done by the assessor was caused by the fact, not that the plaintiff's property was assessed too high, but that of others was systematically assessed too low. The constitution of the state (article 9, § 1) requires that "the legislative assembly shall provide by law for uniform and equal rate of assessment and taxation, and shall prescribe such regulations as shall secure a just valuation for taxation of all property." Now, this board of equalization is the only provision that the legislature has made for the correction of errors, or the equalization of values, in the work of the assessor. The presumption is that the legislature has thereby undertaken to comply with the injunction of the constitution, to secure uniform and equal assessment and valuation of property for taxation; and the statute should be so construed, if it reasonably can. But if the assessor can assess one class of property at its cash value, and another at anything less, and the owners of the first class cannot be heard to complain of the result because their property, abstractly speaking, is correctly valued, and the owners of the second will not complain because they are not injured, but the contrary, then the legislature has made no sufficient provision on the subject.

The statute gives any person "interested" a right "to appear" before the board of equalization. The right "to appear" before a tribunal engaged in the transaction of particular business implies the right to be heard thereabout; so far, at least, as the party is "interested." Now, every one who has property on the assessment roll is so far "interested" in seeing that all other property subject to taxation in the county is put on such roll, and is valued thereon, relatively, as high as his own, or that his own is valued no higher than others. In the assessment of property for general taxation, a "just" or equal valuation thereof is of more importance than an absolutely "true" one; therefore it is no answer to the complaint of a property holder of an unequal assessment or valuation, that his property is assessed at its "true cash value." For, although that may be true in the abstract, he is entitled to have it valued at its true cash value relatively, or according to the standard of cash value adopted in the valuation of other property, either by lowering the valuation of the one, or raising that of the other. The owner of a mortgage on real property given to secure the payment of a debt, which is valued by the assessor at the face of the latter, has cause to complain of an unjust valuation, contrary to the constitution, when an adjoining tract of land, not under mortgage, is valued for taxation at less than the owner would dispose of it at a voluntary sale under ordinary circumstances, and he is "interested" in having the error corrected; and in my judgment he has a right to appear before and be heard by the board of equalization for that purpose.

But the plaintiff, having neglected to avail itself of this means of redress, cannot maintain a suit for relief in this court. It is no excuse for this neglect that the board of equalization, as well as the assessor, were committed to the rule of taxing mortgages, which were generally owned by non-residents, at their face or cash value, and the property in lands, which generally belonged to residents of the county, at much less than such value. Notwithstanding this, it was the duty of the plaintiff, if dissatisfied with the assessment, to pursue the mode prescribed by the statute, relating to assessments, for its correction; when, if it failed, it might have taken the matter before the circuit court of the state on a writ of review, (*Rhéa* v. *Umatilla Co.*, 2 Or. 298,) or brought this suit to restrain the county from collecting the illegal portion of the tax.

There must be a decree dismissing the bill, and for the defendants for costs.