## A. T. WILSON v. E. S. WIGGINS, *et al.*

(Filed July 30, 1898.)

1. TAXATION—*Exemption from Second Assessment—Discrimination.* There is no discrimination between resident and non-resident property owners in the provisions of the act approved March 8, 1895, entitled "Taxation of Transient Property," (Laws 1895, p. 229.) The provision thereof, in section 3, exempting property from assessment where the owner thereof shows to the assessor, under oath, that the same property has been listed for taxation for that year in some other state or in another county of the Territory, applies equally to all the classes of property subjected to taxation by the various sections of the act, regardless of whether the owner is a person settled in, or an association or corporation organized in, the county where said property is sought to be taxed.

2. TAXES—*Assessor—Exemption—Injunction.* A person, to establish his right to such exemption, must claim such exemption, and show to the assessor, under oath, that his property sought to be taxed has been listed for taxation for the year in some other state, or in another county in the Territory. The assessor is the only officer or tribunal authorized to determine the right of such claim to exemp-

tion. Where a party entitled thereto fails or neglects to make such showing to the assessor, and his property is assessed, and taxes levied thereon, injunction will not lie to restrain the collection of such taxes.

(Syllabus by the Court.)

*Error from the District Court of Woodward County; before John H. Burford, District Judge.*

*Long & Noble* and *S. L. Overstreet,* for plaintiff in error.

*H. S. Cunningham, Attorney General,* for defendants in error.

Action by A. T. Wilson against E. S. Wiggins and another. From judgment for defendants, plaintiff brings error. Affirmed.

Opinion of the court by

TARSNEY, J.: Plaintiff is a non-resident of the Territory of Oklahoma, being a resident of the state of Kansas. On the 27th day of June, 1897, plaintiff brought 1,000 head of cattle from the state of Texas into Woodward county, Oklahoma, for the purpose of grazing said cattle, and to prepare the same for market. About the 1st day of August, said cattle were listed for taxation by the township assessor of the township in Woodward county, where said cattle were located, and were valued and assessed by said assessor, for the purposes of taxation, at $10,000. Taxes were levied on such assessment for territorial, county, township, and school purposes, and charged on the tax rolls of said county for said year. The cattle were not listed by the owner for taxation, but were listed by the assessor without the consent of the plaintiff. Said cattle were bought by the plaintiff in Gaines county, Tex., and were listed for taxation in said county and state for the year 1897, before being removed

therefrom, and said taxes were fully paid. On January 3, 1898, plaintiff made application to the board of county commissioners of Woodward county for the abatement of the taxes levied on said cattle in said county, showing to said board that said cattle had been listed for taxation and taxed in the state of Texas for the year 1897, and that said taxes had been paid; but said board refused plaintiff's said application.

An act of the legislature of this Territory, approved March 8, 1895, entitled "Taxation of Transient Property," (Laws 1895, p. 229,) provides:

"SECTION 1. When any personal property shall be located in any county of this Territory after the 1st day of March of any year, which shall acquire an actual *situs* therein before the 1st day of September, such property is taxable therein for that year, and shall be assessed and placed on the tax roll, and the tax collected as provided by this act.

"SEC. 2. Whenever any live stock shall be located in this Territory for the purpose of grazing, it shall be deemed to have acquired an actual *situs* therein, as contemplated by this act.

"SEC. 3. When any person, association or corporation shall settle or organize in any county in this Territory, and bring personal property therein after the 1st day of March, and prior to the first day of September in any year, it shall be the duty of the assessors to list and return such property for taxation that year, unless the owner thereof shall show to the assessor, under oath, that the same property has been listed for taxation on that year in some other state or county in this Territory. If such property is brought within any county after the assessor has made his returns for that year to the county clerk, the assessor shall at once assess such property and return the same to the county clerk, if the tax roll be still in his hands, and after that to the

county treasurer, and the same shall be entered on the tax book and collected as in other cases. If there be no assessor, then any township trustee or member of any city or town council where the property is located, may make and return the assessments, with like force and effect as though made by the assessor. The persons so assessed shall have the right, if assessed after the 3rd Monday in April, to appear before the township or city board of equalization at any time before the taxes become due, and his taxes shall be equalized as provided by law in section 5620 of the Statute of 1893."

The other sections of the act relate to the procedure for the collection of the taxes thus authorized to be assessed and levied. The plaintiff in error does not contend that the taxes sought to be enjoined are illegal solely because the property had previously been taxed for the same year in another jurisdiction, or that the above act is invalid because, under its provisions and scope, double taxation may result; but counsel contend that the act is invalid because it discriminates between resident and non-resident property owners; that under its provisions persons who settle in any county in the Territory, or associations or corporations that organize in any county of the Territory, can be relieved from double taxation, or have their property exempted from taxation under this act by showing to the assessor that the same property has been listed for taxation for the year in some other state or county in the Territory, while non-residents, or persons who do not settle in any county of the Territory, or association or corporation that does not organize in any county of the Territory, cannot have their property thus exempted, or be relieved from such double taxation.

If the act in question were susceptible only of the

construction placed upon it by counsel for the plaintiff in error, and should necessarily be held to show a legislative intent to discriminate between residents and non-residents in the particular suggested, we might be required to determine whether the legislature of this Territory is, by any paramount law, inhibited from authorizing such discriminations. In view of the fact, however, that we are of the opinion that no discrimination was intended to be authorized by the act in question, it is not necessary that we should determine in this case whether the legislature is inhibited from discriminating between the property of resident and non-resident owners in exempting property from taxation. While there is apparent ambiguity upon the face of the act of March 8, 1895, yet, when construed in the light of the law as previously existing, and of the conditions upon which the act was to operate, the intent of the legislature may with reasonable certainty be ascertained. Prior to the passage of said act, no property was subject to taxation for any year, unless the same was located and kept in some county of the Territory on the 1st day of February of said year. It was known to the legislature that vast herds of cattle and other live stock were being brought into the Territory after the 1st day of February of each year, and, after being kept and grazed within the Territory, were removed therefrom before another period for listing property for taxation; that other classes of personal property were being brought into the Territory in large quantities after the period for listing property for taxation, and sold and disposed of by the owner, who would retire from business before the next period for listing. Again, it was within the knowledge of the legislature that vast tracts of land, unoccupied and belonging

to the government, might at any time be opened for settlement, and suddenly populated, requiring the organization of county and municipal governments, needing revenues for their support, thus properly necessitating assessments and levies of taxes before another regular period for listing property generally would occur. Therefore, although the act in question is entitled "Taxation of Transient Property," the scope and purpose of the act is much broader than its title imports. Transient property is not alone within its purview, but it was intended to reach and tax the property of the settler and of corporations organized in the Territory, although brought in for permanent use, as well as the transient property of such settler or corporation or of a non-resident. The first section of the act would seem to be broad enough to comprise all such classes of property, regardless of the residence or non-residence of the owner; but it was evidently in the mind of the legislature that that section might be construed to include only transient property, and not include property brought in by actual settlers or domestic corporations for permanent use in the Territory, and therefore it made special provision for the latter class in section 3 of the act; and while the language of this latter section would seem to limit an exemption from taxation to the property of such settlers and corporations, upon a showing that such property had been taxed elsewhere, we think such was not the intention of the legislature; that the ambiguity, if any, arises from the inaptness with which the subject matter of the different sections are connected.

The first section provides that when any personal property shall be located in any county of this Territory after the first day of March of any year, and before the

first day of September, such property shall be assessed and placed on the tax roll, and the tax collected as provided by the act. Now, the only machinery provided by the act for assessing such property, and placing it upon the tax roll, is found in section 3 of the act. This demonstrates that the provisions of section 3 do not apply alone to the property of settlers and domestic corporations, but that the provisions of said section 3 in relation to assessments apply to all property, of every kind, made subject to taxation by the various sections of the act. Therefore section 1 means that the property thereby made subject to taxation shall be listed, assessed, and placed on the tax roll in the same manner as property subjected to taxation by the third section is listed, assessed, and placed on the tax roll; that is, that it shall be the duty of the assessor to list and return such property for taxation that year, unless the owner thereof shall show to the assessor, under oath, that the same property had been listed for taxation for that year in some other state or county of this Territory.

We are of the opinion, therefore, that the assessors have no authority to list and return any transient or other property of a non-resident for taxation for any year if the owner thereof shall show to the assessor, under oath, that the same property has been listed for taxation for that year in some other state, or in any other county of this Territory; that the exemption from taxation applies to all property of all owners where it is shown in the manner specified that it has been assessed for taxation for the year elsewhere. But this exemption does not go to the right of taxing the property, unless the exemption is claimed and shown in the manner provided by the statutes. We intimate no doubt as to the

power of the legislature to authorize the taxation of any property, although such property may have been previously assessed for taxation in another jurisdiction for the same year. That power was expressly affirmed by this court in the case of *Cattle Co. v. Williamson*, 5 Okl. 488. 49 Pac. 937. We hold in this case that the legislature did not intend to authorize such double taxation by the act in question, provided the owners of the property subjected to taxation by the act should make the showing of its previous taxation in the manner provided by the act.

The petition in this cause does not allege that the plaintiff made any showing, under oath or otherwise, to the assessor, that the property had been assessed for taxation in the state of Texas for the same year. It simply alleges that, five months after the assessment, plaintiff made application to the county commissioners of Woodward county for an abatement of the taxes, showing to said board that the cattle had been listed for taxation, and taxed, in the state of Texas for the year 1897, before being brought to this Territory. This is not a compliance with the statute which entitles the plaintiff to exemption from the tax, and does not present grounds for equitable relief. Where the statute vests in officers or boards authority to hear complaints and correct errors or grant relief to persons aggrieved in tax proceedings, the remedy must be sought there; and a party aggrieved cannot invoke the powers of a court of equity when he has not presented his cause of complaint to the tribunal or officer created by the statute, and authorized to hear the same and grant the proper relief. Assessors are *quasi* judicial officers when acting within the sphere of their jurisdiction, and their assessments, when made,

become judgments to be enforced by a warrant in the nature of a special execution. Their judgments can be reviewed by a court of equity only in an action for fraud, mistake, or other cause giving jurisdiction to courts of equity. (*Railroad Co. v. Nolan*, 48 N. Y. 513.)

There is no more reason for entertaining a suit in equity to review the judgment of an assessor than there would be where, in an action for the recovery of money, a party had a judgment against him upon an erroneous ruling of the law. (*Susquehanna Bank v. Board of Supervisors of Broome Co.*, 25 N. Y. 312.)

The rule denying the right to interfere by injunction to restrain the collection of a tax, unless the case is brought within some acknowledged head of equity jurisprudence, is one of public policy. This court has repeatedly held that section 4143 of the Statutes of Oklahoma of 1893, providing that injunction may be granted to enjoin the illegal levy of any tax, charge, or assessment, or the collection of any illegal tax, charge, or assessment, or of any proceeding to enforce the same, did not substantially enlarge the general powers of a court of equity, and did not create any new remedy; and that such remedy may not be invoked in every case where a tax has been irregularly assessed or levied, nor may it be invoked in any case without the party invoking it bringing himself within the general principles of equitable relief, in addition to establishing the illegality complained of. (*Wallace v. Bullen*, 6 Okl. 17, 52 Pac. 954; *Sweet v. Boyd*, 6 Okl. 699, 52, Pac. 939.)

The plaintiff presents in this case no grounds for equitable relief. If the property was assessed and taxes levied thereon without his knowledge or an opportunity for him to present his claim for exemption to the assessor,

or if, by fraud or mistake of the assessor, he has been deprived of his opportunity to show that he had been elsewhere taxed, some grounds for the interference of the courts could be shown; but the plaintiff admits that he had knowledge of the assessment, and that the same was made by the assessor without plaintiff's consent and against his protest. He refused to present his proofs of his right to exemption to the only officer authorized by law to receive such proofs and to act thereon. He presented them months afterwards to a tribunal not vested by statute with any authority to adjudicate, and, if it had authority, plaintiff neglected to appeal from the order of the board refusing his application, and comes into a court of equity upon this record, and seeks to enjoin the collection of the tax. For the reasons stated, the demurrer to plaintiff's petition was properly sustained, and the judgment of the court below is affirmed.

Burford, C. J., having presided in the court below, not sitting; all of the other Justices concurring.