HELEN G. BROWN, Respondent, v. W. A. SHUPE, OSCAR BAUM, L. A. WHITTEL, J. JESTER, Jr., and FRED L. EVANS, Appellants.

[233 Pac. 59.]

INJUNCTION—PLAIN, SPEEDY AND ADEQUATE REMEDY AT LAW—IRRIGATION DISTRICTS — ASSESSMENT OF BENEFITS — BOARD OF CORRECTION—WAIVER.

1. Where an irrigation district assesses and levies assessments for maintenance and operation in accordance with the provisions of C. S., sec. 4384, an interested party feeling himself aggrieved thereby must appear before the board of correction provided for by C. S., sec. 4386, and present his objections, otherwise he will be deemed to have waived them.

2. A person feeling himself aggrieved by the action of the board of directors of an irrigation district in assessing benefits for maintenance and operation cannot maintain a suit in equity to enjoin the collection of any portion of the tax resulting therefrom, unless he first seeks redress at the hands of the board of correction as provided by statute.

3. Where a plain, speedy and adequate remedy at law exists equitable relief will not be granted.

APPEAL from the District Court of the Seventh Judicial District, for Canyon County. Hon. B. S. Varian, Judge.

Action to enjoin collection of irrigation district assessments. Judgment for plaintiff. *Reversed.*

J. M. Thompson and W. C. Bicknell, for Appellants.

Equity will not grant relief where a plain and adequate remedy at law exists. (173 Fed. 200.)

It does not appear from the complaint that plaintiff has applied to the proper authority for relief before bringing this action. (*Cosgrove v. City of Chicago,* 235 Ill. 358, 85 N. E. 599; *George C. Bagley Elevator Co. v. Butler,* 24 S. D. 429, 123 N. W. 866; *Williams v. Garfield Exch. Bk. of Enid,* 38 Okl. 539, 134 Pac. 863.)

The action of the board of directors in assessing benefits is final and cannot be inquired into except for fraud. (*Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579; *Shattuck v. Smith,* 6 N. D. 56, 69 N. W. 5.)

H. A. Griffiths and Frank E. Meek, for Respondent, cite no authorities on points decided.

BUDGE, J.—This action was brought to enjoin the collection of certain assessments levied upon property in Caldwell. From the record it appears that respondent is the owner of certain lots in the city of Caldwell and within and a part of the Pioneer Irrigation District, "and subject to taxes for the operation and maintenance of said Pioneer Irrigation District." Appellants are directors and officers of the Pioneer Irrigation District, which district, by ordinance and resolution duly and regularly passed and made by the city of Caldwell, was required to and did reconstruct one of its ditches flowing through that city by building a concrete ditch connected with the curb in front of the lots owned by respondent and other lots in that city. The expenses of the construction work were paid by the irrigation district out of

its general maintenance fund. In August, 1920, in accordance with C. S., sec. 4384, an assessment list was prepared by the secretary of the district and the directors of the district thereupon apportioned the benefits received by the lands within the district growing out of the maintenance and operation of the works of the district and thereupon levied assessments upon all of the lands for the expenses of such maintenance, repair and operation. In assessing such benefits the board found that the lots adjacent to the cement curb ditch received as benefits on account of the construction thereof, sixty per cent of the cost thereof, and all other lands in the district were benefited forty per cent thereof, and the taxes upon the lots and land within the district were assessed upon that basis. Respondent thereupon, in her own behalf and in behalf of other owners of lots similarly situated, commenced this action to enjoin and restrain the officers of the district from proceeding to collect the assessments so made, and asked that the same be annulled and canceled. A demurrer to the complaint, filed by appellants, was overruled by the court and they thereupon filed their answer. Respondent filed a demurrer to the answer, which was sustained and upon appellants refusing to plead further, judgment was entered in accordance with the prayer of the complaint. From this judgment this appeal is prosecuted.

Appellants specify as error the action of the court in overruling the demurrer to the complaint, in sustaining the demurrer to the answer and in entering judgment as prayed for in the complaint.

Appellants first contend that respondent has a plain, speedy and adequate remedy at law and is not entitled to equitable relief. This contention is based upon the provisions of C. S., secs. 4384, 4385 and 4386.

C. S., sec. 4384, after prescribing the manner of preparing the assessment list and apportioning the benefits, provides:

" . . . . Such assessment shall be carried out by the secretary . . . . and shall be subject to review by the board of correction, hereinafter provided for."

C. S., sec. 4385, relates to the giving of notice of meeting of the directors to sit as a board of correction.

C. S., sec. 4386, provides that:

"Upon the day specified in the notice required by the preceding section of the meeting, the board of directors, which is hereby constituted a board of correction for that purpose, shall meet and continue in session, from day to day, as long as may be necessary, not to exceed five days, exclusive of holidays, and may make such changes in said assessment book as may be necessary to make it conform to the facts. Assessments levied for maintenance as provided in section 4384 may be reviewed by the board of correction upon request of any person interested. Within five days after the close of said session the secretary of the board shall have the corrected assessment book complete."

It is nowhere alleged that respondent appeared before the board of correction or filed objections to the assessments levied. It is admitted in the complaint that the lots of respondent were "subject to taxes for the operation and maintenance of said Pioneer Irrigation District." It is also admitted that the cost of construction of the ditch was paid out of the maintenance fund of the district. The complaint also alleges: "That the property of this plaintiff and those on whose behalf this action is brought, is not especially benefited and has no interest in or use of or benefit from said concrete ditches other than the general benefits common to all other land owners of said Pioneer Irrigation District receiving water from the ditches of said Pioneer Irrigation District," thereby conceding that her land was benefited, at least to some extent, by the construction of the concrete ditch. It therefore follows that respondent's lots were subject, at least, to part of the assessment charged against them, which the district was entitled to collect. However, respondent did not appear before the board of correction nor tender any part of the amount assessed against her property, neither did she tender any part of that amount into court nor offer to pay it. The evident purpose of the legislature in providing a board of correction was to provide for a review of the

assessment (C. S., sec. 4384), and to give an opportunity to persons interested feeling themselves aggrieved with reference to their assessment, to appear before the board and present their objections and give the board an opportunity to make any corrections that it might deem proper. The board of correction of an irrigation district is analogous to the board of equalization of a county so far as correcting assessments is concerned. A person failing to make such objections to assessments must be deemed to have waived them. In the case of *Carroll v. Gerlach,* 11 Okl. 151, 65 Pac. 844, 845, it is said:

"The rule is well settled that a person aggrieved by the wrongful assessment of his property cannot invoke the powers and jurisdiction of a court of equity to enjoin the collection of a tax resulting therefrom, unless he first seeks redress in the mode prescribed by the statute. Since the legislature has confided the power to abate taxes in the board of county commissioners in the first instance, the courts will refuse to enjoin the collection of an alleged illegal tax on the ground of double or erroneous assessment of the property for taxation until the taxpayer makes an application to abate the taxes before the county commissioners, a hearing is had thereon, and the relief denied. Desty, in his work on Taxation (volume 2, pp. 661, 662), lays down the following rule: 'Equity will not restrain the collection of a tax when there is a full and adequate remedy at law, even though fraud be alleged in the bill. . . . . Where the mode is prescribed, and a tribunal established by law to provide against an illegal tax, complainant has a full and adequate remedy at law.' In *Investment Co. v. Charlton* (C. C.), 32 Fed. 192, it was held that a person who is aggrieved by the wrongful action of an assessor in the valuation of his own or other's property for taxation cannot maintain a suit in equity to enjoin the collection of any portion of the tax resulting from such action, unless he first seeks redress at the hands of the county board of equalization, as provided by statute. In *Campbell v. Bashford,* 2 Ariz. 344, 16 Pac. 269, in a suit to enjoin the collection of an alleged illegal tax, the complaint hav-

ing failed to show that the plaintiff had applied to the board of supervisors for correction of the assessment under the provisions of the Compiled Laws of Arizona, it was held that the court had no jurisdiction to enjoin the collection of the tax until all legal remedies had been exhausted by the plaintiff. In *Wilson v. Wiggins*, 7 Okl. 524, 54 Pac. 718, this court said: 'Where the statute vests in officers or boards authority to hear complaints and correct errors or grant relief to persons aggrieved in tax proceedings, the remedy must be sought there; and a party aggrieved cannot invoke the powers of a court of equity when he has not presented his cause of complaint to the tribunal or officer created by the statute, and authorized to hear the same and grant the proper relief.' "

In the case of *George C. Bagley Elevator Co. v. Butler*, 24 S. D. 429, 123 N. W. 866, the court said:

"When a party, whose property, though assessed at less than its value, is assessed much higher than that of other taxpayers, shall have requested the several boards to equalize taxes in the manner fixed by statute, to wit, by raising the assessment of all property to its actual value—and such boards shall have refused or failed to do their clear duty under the law, then, and only then, let such party apply to the courts for relief."

To the same effect see *Barnett v. Jaynes et al.*, 26 Colo. 279, 57 Pac. 703; *Wilson v. Wiggins*, 7 Okl. 517, 54 Pac. 716; *Williams v. Garfield Exchange Bank*, 38 Okl. 539, 134 Pac. 863; *Eureka Dist. Gold Min. Co. v. Ferry County*, 28 Wash. 250, 68 Pac. 727; *Chehalis Boom Co. v. Chehalis County*, 24 Wash. 135, 63 Pac. 1123; *Board of Commrs. v. Field*, 63 Okl. 80, 162 Pac. 733; *Weatherly v. Sawyer*, 63 Okl. 155, 163 Pac. 717; *Board of Commrs. v. Tinklepaugh*, 49 Okl. 440, 152 Pac. 1119.

It follows from the foregoing that respondent, having failed to appear and present objections to the assessment to the board of correction, must be deemed to have waived such objections and, having a remedy but failing to pursue it, is not entitled to equitable relief. The lower court erred in

40 Idaho—17

overruling the demurrer to the complaint and in entering judgment in favor of respondent. The judgment should be reversed and it is so ordered. Costs are awarded to appellants.

McCarthy, C. J., and Wm. E. Lee, J., concur.

WILLIAM A. LEE, J., Dissenting.—I am unable to agree with the conclusion reached in the majority opinion. The Pioneer Irrigation District includes within its boundaries a part of the city of Caldwell. When the district was organized the board made the apportionment for benefits in July, 1901, in accordance with S. L. 1899, p. 414, sec. 11, as amended by S. L. 1901, p. 194, sec. 11, now C. S., sec. 4362, against each separate tract within the district. With some minor exceptions not necessary to notice, this assessment for benefits was fixed at six dollars per acre for agricultural lands and two dollars per 25-foot lot for city property. This law provides that as soon as the cost of the works necessary for irrigation of the lands of the district is determined, the board of directors shall examine critically each tract or legal subdivision of land in the district with a view of determining the benefits which will accrue to each of such tracts or subdivisions from the construction or purchase of such irrigation and that

"The cost of such works shall be apportioned or distributed over such tracts or subdivisions of land in proportion of such benefits accruing thereto; and the amounts so apportioned or distributed to each of said tracts or subdivisions shall be and remain the basis for fixing the annual assessments levied against such tracts or subdivisions in carrying out the purpose of this act."

The Irrigation District Law has been amended or reenacted many times since its original enactment in 1895, but the above provision has been retained unchanged since it was passed in 1901 and is now a part of C. S., sec. 4362. This language is so plain that it leaves nothing to construction. Prior to the majority opinion every person owning lands within the boundaries of an irrigation district, whether acre-

age or town lots, had, under this statute, an absolute right
to expect and require that the annual assessments levied
against his lands for maintenance and operation be appor-
tioned and distributed to each subdivision, upon the basis
that had been fixed for benefits at the organization of the
district.

In 1920, appellant board levied or pretended to levy upon
respondent's lots, for the annual maintenance and operation
assessment for that year, fourteen dollars for each 25-foot
lot, or seven times the amount that had been fixed in 1901 as
the assessment for benefits. The majority opinion holds that
because the owners of these lots did not assume that the
secretary, who is *ex-officio* assessor of the district, and board
were going to flagrantly violate the plain mandatory provi-
sions of this statute by assessing against these lots, as an
annual assessment, seven times the amount fixed for benefits
and appear before it as a board of correction within forty-
five days after such unauthorized and unlawful action, and
protest the same, they are now without a remedy.

In *Colburn v. Wilson,* 24 Ida. 94, 132 Pac. 579, it is said
that the board in each year shall levy an assessment upon
all of the lands in the district for the expense of maintain-
ing and operating the property of the district; that such
assessment shall be spread upon all the lands of the district
and shall be proportionate to the benefits received by such
lands growing out of the maintenance and operation of said
works of said district; that in making such assessment, it
was intended by the legislature that, in the annual assess-
ment for maintenance and operation of the water system, all
lands irrigable under it, within the district, shall be con-
sidered as a whole, and such lands must be assessed at the
same rate where the benefits, that is, the water needed and
received, are the same; that the statute, which specifically
says that the assessments shall be spread upon all the lands
of the district, necessarily excludes the idea of local assess-
ments.

In *City of Nampa v. Nampa & Meridian Irr. Dist.,* 19 Ida.
779, 115 Pac. 979, it is held that land owners in a city who

have become entitled to the use of water from an irrigation system cannot be denied water for the reason that its delivery has been made more expensive or more burdensome to the company by reason of the city changing the grade of its streets, which it may do.

The annual assessments for maintenance and operation of the works by the secretary, and the action of the board sitting as a board of correction, is purely ministerial. They are not clothed with any discretionary power whatever, except to ascertain the amount necessary to be raised for the maintenance and operation of the system, and then to apportion this to all lands therein upon the basis fixed for benefits. Hence, appellant's attempt in the instant case to levy a special assessment for local improvements against respondent lot owner's property was beyond its power and void. To hold that the officers of an irrigation district have any authority to levy for the annual maintenance and operation of a system, an amount seven times greater than the amount fixed for benefits, at the creation of the district, as the majority opinion does hold, virtually repeals this provision of the statute and removes all restrictions upon the power of the board to levy assessments against lands in an irrigation district. It removes a safeguard that for nearly a quarter of a century has been retained in the law notwithstanding all the other changes that have been deemed necessary.

The cases cited in the opinion have no application to the facts of the instant case. They all relate to a tax assessed for a governmental purpose, where the collection of the same is sought to be enjoined for some irregularity in the procedure and where the law under which such tax was levied gave the aggrieved party an adequate remedy.

"Although a tax be authorized by an act of the legislature yet where the municipal authorities have disregarded and failed to comply with all the requirements of the statute, equity will enjoin a sale of the land for such a tax upon the ground that the proceedings are *coram non judice* and void." (High on Injunctions, 4th ed., sec. 536, p. 511; *Mayor v. Grand Lodge,* 44 Md. 436; *Morris v. Merrell,* 44 Neb. 423, 62

N. W. 865; *Butler v. City of Detroit*, 43 Mich. 552, 5 N. W. 1078; Cooley on Taxation, 3d ed., p. 1420.)

Before the legislature can authorize any subdivision of the state to levy a tax upon the property of a citizen, it must prescribe that the rate of taxation shall be based upon some fixed basis or valuation, which must be uniform within its class. It has, by the district irrigation law, given the board authority to levy an annual maintenance and operation tax upon all the property of its system, prescribed that the assessment for benefits shall be and remain the basis for this annual levy. Where a district fixes the rate of the annual levy at an amount much greater than the fixed basis upon which the levy is to be made, it has exceeded its authority and the tax is void. The judgment of the lower court was clearly right and should be affirmed.

(January 3, 1925.)

ON REHEARING.

BUDGE, J.—We have very carefully reconsidered the conclusions reached upon the former hearing of this case and will endeavor to more clearly state our views with reference to some of the questions presented upon rehearing. We are convinced that under the authority of *City of Nampa v. Nampa & Meridian Irr. Dist.*, 19 Ida. 779, 115 Pac. 979, the cementing of the ditch abutting upon the lands of respondent, was an assessment for maintenance and not for construction.

When the Pioneer Irrigation District was organized in 1901 under the law then in force apportionment of benefits was then made by the directors and became final upon proceedings for confirmation. Rev. Codes, sec. 2399, then provided that:

"Whenever thereafter any assessment is made either in lieu of bonds, or any annual assessment for raising the interest on bonds, or any portion of the principal, *or the expenses of maintaining the property of the district,* or any

special assessment voted by the electors, *it shall be spread upon the lands in the same proportion as the assessment of benefits,* and the whole amount of the assessment of benefits shall equal the amount of bonds or other obligations authorized at the election last above mentioned.''

In other words, the law in force at the time of the organization of the district provided expressly that assessments for maintenance should be based upon the original assessment or apportionment of benefits. In 1911 the provision of the statute above quoted was expressly amended by striking out the provision ''*or the expenses of maintaining the property of the district.*'' (C. S., sec. 4362.)

The act of 1911, C. S., sec. 4384, provided for an independent levy of assessments for maintenance and operation not based upon the original assessment of benefits but based upon the benefits received by the lands from the maintenance and operation of the works of the district during each year. Said act, among other things, provides that the secretary of the board of directors shall be the assessor of the district and on or before August 15th of each year shall prepare an assessment-book containing a full and accurate list and description of all the lands of the district, giving the number of acres listed to each person. The act further provides that in all districts in which an assessment is levied for the purpose of maintaining and operating the works of said district, the board of directors shall meet at the office of the district on the third Tuesday of August of each year and proceed to levy an assessment upon all of the lands of the district subject to such assessment for expenses of maintaining and operating the works of the district, and said assessment shall be proportionate to the benefits received by such lands growing out of the maintenance and operation of said works. Such assessment shall be carried out by the secretary and entered into an appropriate column on the assessment-roll immediately and shall be subject to review by the board of correction thereinafter provided for. C. S., sec. 4385, provides for the publication of the notice of meeting of the board to sit as a board of correction, in a newspaper published in each

of the counties comprising the district, which notice is given by the secretary of the board, fixing the time for its meeting and providing that the assessment-books must remain in the office of the secretary for the inspection of all ·persons interested. C. S., sec. 4386, provides that upon the day specified in the notice of the meeting of the board of directors, which board is constituted a board of correction, the board shall continue in session from day to day not exceeding five days, exclusive of holidays and may make such changes in said assessment-book as may be necessary to make it conform to the facts; and it is further expressly provided that assessments levied for maintenance may be reviewed by the board of correction upon the request of any person interested. Such provisions as we have called attention to do not appear in Rev. Codes, sec. 2409. There was no provision for the purpose of reviewing or equalizing assessments for maintenance and operation. It is therefore quite clear that all assessments for all purposes were based upon the original assessment of benefits and it is equally clear that under the amendments by the 1911 law as above cited, assessments for operation and maintenance were stricken out of Rev. Codes, sec. 2399, and an entirely different and independent procedure provided for. That the legislature had the power to change the law in this respect, to our minds is unquestioned, and that it clearly intended to do so is also apparent. We are not concerned with the reasons that prompted the change. However, it may be pointed out that some lands within the district would not be benefited by the maintenance and operation of its works and therefore should not be assessed. In order to avoid this injustice the legislature may wisely have provided for assessments of benefits to be imposed only as against such lands within the district as would be benefited by the maintenance and operation of its works.

It may be suggested that the board acted wilfully and arbitrarily in that it assessed against respondent's lots abutting the concrete canal sixty per cent of the cost of cementing the same and assessed forty per cent against the remaining lands within the district. The facts alleged in the plead-

ings do not warrant this conclusion and we do not think it here for consideration. There is no fraud alleged in the pleadings, which being true, that question is not here. The point urged is that the board was without power to assess sixty per cent against the abutting lots and only forty per cent against all of the remaining lands within the district. Such assessment is not a tax, neither is it based upon a valuation of property for governmental taxation purposes. It is an assessment for local improvements and based upon benefits. It is a proceeding *in rem* against the property out of which no personal liability arises. The legislature had authority to clothe the board with the power to levy assessments for local improvements against all the land within the district, said levy to be made according to benefits. As was said in the case of *Oregon Short Line R. R. Co. v. Pioneer Irr. Dist.*, 16 Ida. 578, 591, 102 Pac. 904, 908: "The question of benefits, however, to the lands using water and the lands not requiring water is one merely of degree, and the extent of the benefits assessed to the lands of the district is a matter committed to the jurisdiction of the board of directors of such district." And further on, at page 608 (102 Pac. 915), the following language is found:

"The assessment made by the board of directors is simply fixing the rate necessary and required to raise revenue required by the district as apportioned to the lands of the district, according to benefits. The principle involved in assessments for local improvements is different from that underlying general taxation. The organization of the district, in the first instance, was intended for local improvement, and the assessment levied is for the purpose of carrying out the local improvement; and we do not understand the rule to be that the general method of fixing values and making assessments against property for general tax purposes applies to levies made for local improvements"; and quoting from the opinion of the supreme court of California in the case of *Turlock Irr. Dist. v. Williams*, 76 Cal. 360, 18 Pac. 379: "Nor does it follow that the method of assessments, and their collection, adopted must be assimilated to and follow exactly

the mode provided in the constitution for the assessment and collection of taxes for general state purposes. The nature of the assessment is one for local improvements, which, however, eventuate in the advancement of the public good, and such assessments and collections can be lawfully made. It is 'clear that those clauses of the constitution which provide that taxation shall be equal and uniform, and which prescribe the mode of assessment, and the persons by whom it shall be made, and that all property shall be taxed, have no application to assessments levied for local improvement.' ''

Art. 7, sec. 5, of our constitution has no application to assessments levied for local improvements but applies only to the levy and collection of taxes for governmental purposes. In the case of *Colburn v. Wilson*, 24 Ida. 94, 132 Pac. 579, which was decided after the amendment of 1911, there is language used to the effect that the assessment for benefits for maintenance arises from the supply of the needed water and that the assessments must be spread upon all the lands of the district according to benefits, the inference being that the supply of the needed water is the exclusive benefit. If the only benefit to be considered is that arising from the supply of the needed water a different situation might be presented, but strictly speaking, that is not true. There are other benefits that may accrue, as in the instant case, the concreting of the canal abutting upon the land of respondents. The benefit accruing to all lands within the district is one of degree and not necessarily an equal benefit. The theory of the law is that the land owners of the district shall each pay according to benefits received from annual maintenance and operation and the purpose of the enactment of C. S., secs. 4384, 4385 and 4386, was to carry this into effect. As was said in the *Colburn-Wilson case, supra,* at page 103 of 24 Ida. (132 Pac. 582):

''Of course the application of water necessarily implies an expenditure to pay the cost of maintenance, as it cannot be secured without some expenditure, but such expenditure might be made for maintenance and no water secured to some of the lands; but where there are lands within the district

where water cannot be secured, such lands would not be benefited, and therefore would not be subject to annual maintenance in proportion to expenditure. In such case such lands would not be subject to annual tax for such expenditure, and it is clear from the act itself that lands which cannot receive water should not be assessed annually.''

Further on in that opinion the court says:

''We are of the opinion that sec. 2407 (Rev. Codes) is clear and explicit and specially confers jurisdiction on the board to act upon its own judgment, and levy an assessment upon all the lands of the district for expenses in maintaining and operating the property of the district, and that such assessment shall be spread upon the lands of the district, and shall be proportionate to the benefits received by such lands, growing out of the maintenance and operation of the works of said district. Such jurisdiction having been conferred by the legislature upon the board in this instance, and the board, having determined and allowed the expenses of improving and maintaining the system during the year the assessment is made, and having jurisdiction to make the assessment upon all of the lands of the district, should spread the same upon all the lands of the district, and such assessments shall be proportionate to the benefits received by such lands, growing out of the maintenance and operation of said works of said district according to the judgment and discretion of said board, and no claim being made of any fraud, the determination of the board must be accepted as conclusive. (*Shattuck v. Smith,* 6 N. D. 56, 69 N. W. 5.)''

If in the judgment of the board the abutting land received a greater benefit by the construction of the concrete ditch than the remaining land of the district, it was within its jurisdiction to so apportion the benefits. If the board, in making the assessment involved in this case, made a mistake of judgment and assessed the abutting lots out of proportion or in excess of the benefits that would accrue, there was an adequate remedy. If it was a mere mistake of judgment the collection of the tax will not be enjoined where there is a remedy at law. To hold otherwise than indicated

in this opinion would be to eliminate C. S., secs. 4384, 4385, and 4386. These sections provide a remedy to any land owner dissatisfied with the annual assessment for maintenance and operation and must be first resorted to.

From what has been said it follows that the judgment of the trial court must be reversed and it is so ordered. Costs to appellant.

McCarthy, C. J., and Wm. E. Lee, J., concur.

WILLIAM A. LEE, J., Dissenting.—I cannot concur in either of the majority opinions, and believe the views expressed are in conflict with the law as it has been frequently announced by this court and which has become a rule of property right and should not now be changed.

The original irrigation district law, Sess. Laws 1895, p. 183, provided a system for taxing the property of an irrigation district to raise revenue for all purposes for which a district was authorized to tax property in a manner very similar to that provided for raising revenue by general taxation. It was required to elect an assessor, a collector and a treasurer in addition to its board of directors. The assessor was required to assess the property according to its cash value, and the board of directors was required to sit as a board of equalization and equalize such assessments, following the requirements of art. 7, sec. 5, of the constitution, that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax.

This law was amended by the fourth and fifth sessions, Sess. Laws 1897, p. 146, Sess. Laws 1899, p. 408, but the same general plan for taxing the property of the district was continued in force, and except for its historical value and as tending to show that there was a complete change from the system of taxing the property of an irrigation district on the basis of its cash value to the later method of assessing it according to benefits, these earlier acts are not now important.

. In *Pioneer Irr. Dist. v. Bradley,* 8 Ida. 310, 101 Am. St. 201, 68 Pac. 295, it is said that: ''While the original district irrigation law provides for an assessment, by acreage, and fails to provide a means by which the benefits received may be adjudicated, the amendatory act fully provides the method and means by which such benefits may be adjudicated, and is not in conflict with the provisions of the fourteenth amendment to the constitution of the United States, which prohibits the taking of private property without due process of law under the guise of taxation or otherwise.''

The amendatory act here referred to is Sess. Laws 1901, p. 191, sec. 2, which provides that the board shall ''examine, critically, each tract or legal subdivision of land in said district with a view of determining the benefits which will accrue to each of such tracts or subdivisions from the construction or purchase of such irrigation works; and the cost of such work shall be apportioned or distributed over such tracts or subdivisions of land in proportion of such benefits accruing thereto; *and the amount so apportioned or distributed to each of said tracts or subdivisions shall be and remain the basis for fixing the annual assessment levied against such tracts or subdivisions in carrying out the purpose of this act.*''

The irrigation district law has since been frequently amended and sometimes completely revised to meet the changing conditions, but the foregoing provision has continued in force ever since its enactment.

Sess. Laws 1903, p. 150 et seq., purports to be a complete revision and re-enactment of the irrigation district law but continued in force the foregoing provision, and made it incumbent upon the district to obtain a judicial determination of the assessments for benefits. It requires the board to file a petition in the district court of the county in which some of the lands of the district are situate, and the apportionment for benefits and distribution of the same made by the board must be confirmed by a judgment of the court. This revision added secs. 23, 24 and 25, pp. 170, 171, which pro-

vide that the secretary of the board shall be the assessor of the district and prepare a book containing an accurate list of all the land of the district and a list of the persons who own, claim or have possession or control of the same, or if the owner is unknown, to so indicate; and that in September of each year, after notice has been given, the board will meet to correct assessments. It will be observed that after the plan of assessing the property of an irrigation district according to benefits was adopted in 1901 and revised in 1903, the board of directors of the district no longer sat as a board of equalization but were made a board of corrections. It seems clear from these changes in the law that the legislature intends that all of the property of an irrigation district shall, for all purposes, be assessed upon the basis of benefits, and that such benefits shall be apportioned or distributed over all the lands of the district, and that after such apportionment has been confirmed by a judgment of the district court "the amount so apportioned or distributed to each of said tracts or subdivisions *shall be and remain the basis for fixing the annual assessments levied against such tracts or subdivisions* in carrying out the purpose of this act."

There can be no reasonable doubt that the legislature intended by making this change that the assessment for benefits and its apportionment and distribution to each tract or subdivision of land within the district should be a fixed and permanent basis for all future assessments thereafter to be levied against the lands of an irrigation district. It also seems clear that the legislature, in providing a ratio of permanent valuation upon each tract or subdivision of land in the district and an apportionment of the same based solely upon benefits, intended that all assessments thereafter should be levied against each tract or subdivision upon this basis instead of being subject to an annual assessment upon an actual cash valuation as the old system had provided.

Sess. Laws 1907, p. 484, amended sec. 11 of the act of 1903, making it sec. 15C, by striking certain provisions therefrom, and added the following: "Whenever thereafter any

assessment is made either in lieu of bonds or any annual assessment for raising the interest on bonds or any portion of the principal *or the expenses of maintaining the property of the district or any special assessment voted by the electors,* it shall be spread upon the lands in the same proportion as the assessment of benefits and the whole amount of the assessment of benefits shall equal the amount of bonds or other obligations authorized at the election last above mentioned.''

I think it must be conceded that the foregoing adds nothing to the provision already found in the section, reading, ''and the amount so apportioned or distributed to each of said tracts or subdivisions shall be and remain the basis for fixing the annual assessments levied against such tracts or subdivisions in carrying out the purpose of this act.'' The section as thus amended became Rev. Codes, sec. 2399. Sess. Laws 1911, p. 496, amended sec. 2399 by omitting the italicized words, ''or the expenses of maintaining the property of the district or any special assessment voted by the electors.'' The majority opinion upon rehearing appears to base its conclusion upon the change made by the omission of these words in the amendment of 1911 and upon the assumption that C. S., secs. 4384, 4385 and 4386 were first introduced into the irrigation district law by this act of 1911. As to both of these conclusions I think the court is in error. This provision omitted from the act of 1911 had been added by the act of 1907, but it is clearly redundant and surplusage, and therefore added nothing to the section with regard to fixing the basis for the annual assessments, it already providing that the amount of benefits apportioned and distributed should be and remain the basis for fixing annual assessments, hence its omission from the section as amended in 1911 could not operate to repeal the proviso of 1901, which has ever since been a part of it.

The majority opinion reviews the provisions of C. S., secs. 4384, 4385 and 4386, which provide the present method for the levy and collection of assessments against the lands of an irrigation district. The review of these provisions is followed by the statement that ''It is therefore quite clear that

all assessments for all purposes were based upon the original assessment of benefits and it is equally clear that under the amendments by the 1911 law as above cited, assessments for operation and maintenance were stricken out of Rev. Codes, sec. 2399, and an entirely different and independent procedure provided for.'' The act of 1911 added what is now the second paragraph of C. S., sec. 4384, but except as to this all the remaining provisions referred to are secs. 23, 24 and 25, Sess. Laws 1903, pp. 170, 171, and secs. 2407, 2408 and 2409 of the Rev. Codes. Hence a conclusion based upon the assumption that these provisions of the statute were not passed until 1911 is erroneous.

Neither of the opinions expressly overrules the former decisions of this court construing the irrigation district law nor attempts to differentiate them from the case at bar. The conclusion reached is directly contrary to the rule announced in these former cases.

In *City of Nampa v. Nampa etc. Irr. Dist.*, 19 Ida. 779, 115 Pac. 979, this court said ''that is, the assessment of benefits when once made remains fixed and continues the basis for spreading future assessments.'' In construing Rev. Codes, sec. 2419, which is now C. S., sec. 4407, the court says: ''The assessment, under section 2419, would be charged against all the lands in the district in proportion to the original apportionment of benefits; if the directors decide to resort to tolls instead of to an assessment to meet these expenses, all the tolls in the district will necessarily be proportionally increased.''

In *Colburn v. Wilson*, 24 Ida. 94, 132 Pac. 579, in construing Rev. Codes, sec. 2407, now C. S., sec. 4384, as the same was amended by Sess. Laws 1911, the court said:

''Sec. 2407 of the Rev. Codes provides for assessments to be levied for the purpose of maintaining and operating the works of said district, and requires that such assessments shall be proportionate to the benefits received by such lands growing out of the maintenance and operations of said works. In construing said section, this court should be guided by the fundamental principles which govern the interpretation of

statutes, and the section should be interpreted in connection with all parts of the act, for the purpose of accomplishing the objects contemplated by the legislature. . . . . In other words, under sec. 2407, it was the intention of the legislature that all lands within an irrigation district available for and subject to irrigation, under the system constructed, *must be considered as a whole,* and that the assessment shall be spread upon all the lands of the district which are or may be supplied with water by such district, under said system.

"It is apparent from the creation of the district and the construction of the system and the maintenance of such system, that there can be no benefit to the land from the maintaining and operating of such irrigation system, other than the benefit arising from the supplying of the needed water. The supplying of the water is the benefit sought by the provision of the act and the whole benefit is the water supplied, and the incident of such supply of water is the expenditure.

"The benefit of the water supplied to the owners of land within the district, as provided by sec. 2407, means such benefits as contribute to promote the prosperity of the district, and add value to the property of the respective owners of the entire district, and such improvement of land in any portion of the district adds to and increases the value of the lands of the entire district as the water is applied and devoted to a beneficial use by the owners through said system. . . . .

"In making such assessment it was intended by the legislature that in the *annual assessment for maintenance and operation* of the water system the lands irrigable under the system within the district should be considered as a whole, and such lands must be assessed *at the same rate* where the benefits, that is, the water needed and received, are the same. The statute specifically says that said assessment shall be spread upon all the lands of the district. This language necessarily *excludes the idea of local assessment,*—that is, any assessment which does not include all the lands in the district . . . . and the fact that such expense and assessment is largely incurred by reasons of improvement and

maintenance of a part of the system, or, as in the present case, where there are two arms of the main canal and such expense is incurred in the improvement and maintenance of one of these two arms to a greater extent than the other, and the two arms are in no way connected or beneficial one to the other, such expenditure will not alter or change the requirement of the statute that such assessment shall be made upon all the lands within the system."

In *Holland v. Avondale Irr. Dist.*, 30 Ida. 479, 483, 166 Pac. 259, 261, this court, speaking through Justice Rice, said:

"Appellant further contends that he should not be required to pay the assessment of $2.50 per acre levied for the maintenance of the works for the year 1913. . . . . Special assessments are not provided for in secs. 2407 to 2409 and are therefore to be levied and collected in conformity to the procedure for levying and collecting assessments for the payment of principal and interest of bonds."

In *American Falls Reservoir Dist. v. Thrall*, 39 Ida. 105, 123, 228 Pac. 236, 241, in commenting upon the amendment of Sess. Laws 1901, p. 191, sec. 2, as heretofore quoted, it is said: "This apportionment for benefits, after having been fixed by the board and such apportionment affirmed by decree of the district court, stands as the permanent assessment, and equalization of the value of each separate tract or subdivision, and the basis upon which all subsequent levies, for any purpose, must be made."

The facts that have given rise to the controversy in the case at bar are as follows: In August, 1920, an assessment for maintenance was prepared by the secretary and directors of appellant district. On the seventeenth day of August thereafter the board estimated the expense of maintaining and operating the property of the district to be $68,440, and ordered the same spread upon all the lands of the district in the sum of $1.85 per acre for lands outside of the platted portions of the cities of Caldwell and Nampa. The board made a further finding that the cost of reconstructing in cement certain ditches in the city of Caldwell was $6,152. In addition to the special assessment they levied against 25-

40 Idaho—18

foot platted lots an additional $1.20 and $1.85 for each acre of land in blocks within Washington Heights and $1.85 per lot in Callaway addition in said city. The board then ordered that the sum of $14.22 per 25-foot lot, of which $13.02 was for the special improvement and $1.20 for the general operation and maintenance, be spread upon the assessment-roll against those lots only which fronted on said special improvement area. Three different rates were established for town lots and a fourth for agricultural land without the towns. No complaint is made by respondent as to the validity of the assessment of $1.85 for the unplatted acreage within the towns or $1.20 for each of the platted lots, this action being directed against the special assessment of $13.02 for each lot fronting on the concrete ditch.

This irrigation district was organized in 1901 and thereafter proceeded with the formality required by law to assess the property within the district according to benefits and to apportion the same as required by sec. 2 of the act of 1901, first above quoted, and fixed the assessment for benefits upon farm lands at $6 per acre and upon the town lots in question at $2 per 25-foot lot. The board appears to have followed the law for all assessments made against the property of this district prior to this time, and to have levied and collected assessments for all purposes upon the basis of the benefits as fixed by the board and confirmed by the court.

The original opinion states a correct general rule of law, that ordinarily equity will not restrain the collection of a tax where the complaining party has failed to first seek redress from the taxing authorities that levied the same. This rule has no application where the taxing authority exceeded its jurisdiction in levying the tax. (Cooley's Taxation, 4th ed., vol. 3, pp. 2406, 2412, and authorities cited under note 74.) The opinion upon rehearing appears to be based upon a different theory, for it holds that "such assessment is not a tax, neither is it based upon a valuation of property for governmental taxation purposes. It is an assessment for local improvements and based upon benefits. It is a proceeding *in rem* against the property out of which no personal liability

arises.'' As all proceedings to levy and collect property taxes, even for governmental purposes, are proceedings *in rem*, it is not perceived why this being a proceeding *in rem* should differentiate the assessment from being a tax. It is not a tax levied for governmental purposes in the sense that state and county taxes are levied, but as said in *Nampa v. Nampa & Meridian Irr. Dist.*, 23 Ida. 422, 131 Pac. 8, and quoted with approval in *Colburn v. Wilson, supra:* ''The appellant company is a *quasi*-public corporation, organized to conduct business for the private benefit of the owners of lands within its limits and of such a character as to concern and interest the public generally. . . . . If the city can pre-scribe the method in which water may be delivered through its streets, and the water user, on the other hand, has ac-quired a constitutional right to have water delivered to him from the canal or lateral of the district's system, then it would seem that the irrigation district is left only the one alternative, namely, to construct a pipe-line and deliver water to the consumers through such line.

''It is clear that the district must construct its necessary canals and laterals within the corporate limits of the city and pay for such construction as the law directs.''

The majority opinion, upon the authority of this case, holds that the cement ditch abutting upon the lands of re-spondent was an assessment for maintenance, not for con-struction. It is also said that art. 7, sec. 5, of our constitution has no application to assessments levied for local improve-ments.

The assessment and apportionment for benefits as fixed by the district in 1901 is $2 for each 25-foot lot within a city and $6 per acre for agricultural lands. The assessment com-plained of, and which was levied under the guise of being a maintenance tax, for a single year is six and one-half times the original assessment for benefits. While the agricultural lands are favored in this particular instance, if the power exercised by the board is lawful, it may in any succeeding year levy six and one-half times the total assessment for benefits of $6 per acre upon any or all of the agricultural

lands, or approximately $40 per acre, and the owners of such lands would be without remedy. The legislature. has not given the board of directors of an irrigation district such. power to tax the property of a district, and cannot do so, under the limitation of art. 7 of the constitution.

An irrigation district is a public or *quasi*-public corporation, not organized for governmental purposes, but to conduct the business for the private benefit of the owners of the land within its limits, and as respects its contracts it is a municipal corporation. (*American Falls Reservoir Dist. v. Thrall, supra,* and authorities there cited.)

While the taxing power of an irrigation district differs in a number of respects from that of a corporation organized exclusively for governmental purposes, its power to tax the property of a district to the extent of the needs of the district is for all practical purposes the same as that given to a corporation created for governmental purposes.

A tax in the general sense of the word includes every charge upon persons or property imposed by or under the authority of the legislature for public purposes. (*City of Madera v. Black,* 181 Cal. 306, 184 Pac. 397; *People v. McCreery,* 34 Cal. 454.) It is an enforced contribution of money or other property, assessed in accordance with some reasonable rule of apportionment by authority of a sovereign state on persons or property within its jurisdiction, for the purpose of defraying the public expenses. (26 R. C. L., p. 13, sec. 2.)

It is a universally accepted principle of taxation that taxes should be levied with equality and uniformity and in accordance with some reasonable system of apportionment, calculated to justly distribute the public burden. (26 R. C. L., p. 241, sec. 214.)

The constitutional provision that taxes shall be uniform upon the same class of subjects, while it permits taxation upon one class to be different from that of another class, the classification must be genuine and based upon a material difference and not discriminatory between subjects which properly belong to the same class. The right of classifica-

tion is allowed in order to avoid or correct inequalities, never to create them. (26 R. C. L., p. 243, sec. 216.)

In *Oregon Short Line R. Co. v. Pioneer Irr. Dist.*, 16 Ida. 578, 605, 102 Pac. 904, 913, it is said: ''The determination of the question of benefits is not the fixing of a tax. It is merely an appraisement and a fixing of values of the lands of said district as a basis for future assessments.''

Since the amendment of 1901 provides that assessments shall be according to benefits, this becomes a compact among the several land owners, within a given area when they organize the same into an irrigation district, and when the land owners within this area petition to create an irrigation district all subsequent steps taken in its organization, including the vote for its organization, the election of its officers, the proceedings to apportion benefits against the several tracts, and the confirmation of this apportionment by the district court, enter into and become a part of the agreement or compact as between themselves. They agree that their property shall be liable for all the obligations that may arise out of the creation and operation of such a district, and to none other. By operation of law the various land owners within the district agree that their lands may be assessed for the raising of revenue for all purposes upon the basis of the relative values fixed for benefits, which must be done after a critical examination of each tract or subdivision of the land by the board, and thereafter such valuation must be confirmed by the judgment of a court. This assessment for benefits is the first step required to be taken after the organization of the district.

The property owners of this district, when the same was organized in 1901, had a right to rely upon the assessment for benefits apportioned or distributed to each tract or subdivision in the district and upon it being and remaining the basis for fixing the annual assessments levied against such tracts or subdivisions in carrying out the purposes of the organization of the district, as the law then provided and as it has ever since been. The majority opinion in the instant case wholly disregards this provision of the statute, and in

effect says that an assessment for maintenance and operation and its distribution upon the lands of the district may be made without any regard to the assessment for benefits. This disregards the solemn and binding compact between the land owners of the district as well as the basic principle of art. 7 of the constitution, that all taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax. It violates the federal constitution, which prohibits a state from passing any law that impairs the obligations of a contract, and takes property without due process of law.

The judgment of the district court should be affirmed.